Robert Scott MORRIS and Myra
K. Morris, Appellants,

v.

Harlon COPELAND, Sheriff of Bexar
County and Bexar County, Jointly
and Severally, Appellees.

No. 13–95–168–CV.

Court of Appeals of Texas,
Corpus Christi.

March 20, 1997.

Rosalie M. Lopez, Tuscon, AZ, for appellants.

David T. Bright, Sorrell, Anderson, Lehrman, Wanner & Thomas, Corpus Christi, Mark S. Kloster, Bexar County District Attorney's Office, San Antonio, for appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from an order granting summary judgment to Bexar County and its sheriff, Harlon Copeland. Robert Scott Morris and his wife sued Bexar County and Copeland, in his official capacity as Bexar County Sheriff, asserting state-law claims and claims under 42 U.S.C. § 1983. These claims related to Morris' arrest and imprisonment based upon an indictment and capias issued by Bexar County naming him as the accused. The trial court granted a take-nothing summary judgment for appellees. The Morrises appeal by eighteen points of error. We affirm.

Ralph Sramek, a narcotics agent for the Texas Department of Public Safety, completed an undercover drug transaction with James Scott Morris. Afterwards, a Bexar County grand jury issued a true bill of indictment naming *Robert* Scott Morris, the plaintiff below, as the person involved in the drug transaction. The indictment alleged that on August 2, 1989, "Robert Scott Morris" delivered less than 28 grams of methamphetamine to Ralph Sramek. Bexar County issued a capias naming Morris as the person for arrest. Copeland's name appears on the capias, and a deputy signed it. On May 12, 1990, two Nueces County Precinct 8 deputy constables, acting on the capias, arrested Morris and took him to the Nueces County Jail. He was detained there and later released on $15,000 bail.

Morris and his wife sued Copeland, Bexar County, and other defendants for the alleged wrongful conduct relating to Morris' false arrest and imprisonment. They asserted state-law claims and violations of 42 U.S.C. § 1983.

Bexar County and Copeland filed a joint motion for summary judgment charging that sovereign immunity barred the suit. They also asserted that the Texas Tort Claims Act[1] (TTCA) excluded claims arising out of false arrest and imprisonment, claims for which the government entity did not receive written or actual notice, and claims for damages which were not covered by the use of

tangible or real property. Copeland asserted that the Morrises could not sue him because he was not a governmental entity under section 101.001(2) of the TTCA. Regarding the Morrises' section 1983 claims, Bexar County and Copeland, in his official capacity, asserted that they were not liable under section 1983 because they had no policy or custom which authorized or approved any alleged acts of misconduct.

In their response to the summary judgment motion, the Morrises asserted that Bexar County and Copeland had received actual and written notice of their claim. They asserted that tangible property, that is, computers, vehicles, and police accessories, caused their injuries and that the intentional-tort exception to the TTCA's immunity waiver did not bar their claim. They alleged that Copeland was responsible for specific acts which caused their injury, that is, he signed the capias naming Morris as the person designated for arrest. They asserted that the warrant was not valid because it had expired. Further, they asserted that there were no procedures or policies in place to prevent the deprivation of personal liberty.

The trial court granted summary judgment for appellees without specifying the ground or grounds on which it relied. On December 16, 1994, the trial court signed an order which severed the Morrises' claims (negligence, violation of civil rights, 42 U.S.C. § 1983, false arrest & imprisonment, assault & battery, libel & slander, intentional infliction of emotional distress, civil conspiracy, and *respondeat superior*) against Copeland and Bexar County from the main action and made the severed action the subject of a separate suit. This appeal involves only Copeland and Bexar County.

### Standard Of Review

To prevail on a summary judgment motion, a movant must establish that no genuine issue about any material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively ne-

---

1. *See* TEX.CIV. PRAC. & REM.CODE ANN. §§ 101.001– 110.007 (Vernon 1986 & Pamph.1997).

gates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to a summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

■ By point one, the Morrises complain that the trial court erred in granting summary judgment because they were entitled to amend their pleadings, and appellees, by moving for summary judgment, circumvented special-exception practice. Ordinarily, a trial court cannot base a summary judgment solely upon the plaintiff's failure to plead a cause of action unless the defendant levels a special exception to the deficiency, affording the plaintiff an opportunity to amend the pleadings to state a cause of action. *See Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974). However, when the plaintiff pleads facts which affirmatively negate its cause of action, summary judgment on the pleadings is proper. *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 269 (Tex.App.—Corpus Christi 1991, writ denied).

In the instant case, the Morrises filed their original petition on October 25, 1991. Appellees filed their summary judgment motion on August 18, 1993. The Morrises filed their response on November 23, 1993. They filed their second- and third-amended petitions on November 23, 1993 and January 7, 1994 respectively. The trial court signed the summary judgment order on January 14, 1994. Thus, the Morrises had an opportunity to, and did, amend their pleadings prior to the time the trial court granted summary judgment. Furthermore, the trial court did not grant summary judgment on the pleadings; rather, it granted summary judgment based upon appellees' summary judgment motion and the evidence attached thereto. We hold that the trial court did not grant summary judgment on the pleadings, allowing appellees to circumvent special-exception practice. We overrule point one.

■ By points two, four, five, six, and eight, the Morrises assert that the trial court erred in granting summary judgment favorable to appellees. The Morrises sued Copeland in his official capacity as the Bexar County Sheriff. Article IX, section I of the Texas Constitution provides that counties are legal subdivisions of the State. TEX. CONST. art. IX, § 1. A suit against a government official in his official capacity seeks to impose liability only upon the governmental entity the official represents, and any judgment in this type of suit is collectible only against the governmental entity, not against the official's personal assets. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Harris County v. Walsweer,* 930 S.W.2d 659, 665 (Tex.App.—Houston [1st Dist.] 1996, no writ); *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147, 162 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *see also Bowles v. Reed,* 913 S.W.2d 652, 655 (Tex.App.—Waco 1995, writ denied) (suit against county official is a suit solely against the county); *Bowles v. Wade,* 913 S.W.2d 644, 649, 649 n. 13 (Tex.App.—Dallas 1995, writ denied) (suits against public officials are suits against the entities for whom they work, and official-capacity judgments impose liability on the entity).

■ Counties enjoy sovereign immunity except to the extent abrogated by the Texas Tort Claims Act. *San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 283 (Tex. 1996). The Tort Claims Act provides that the State's sovereign immunity against a tort action is waived only if the claim is for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

■ Generally stated, the Morrises' allegations against Copeland were that he issued the warrant which resulted in Morris' arrest, that he did not instruct his officers or other officers not to arrest Morris on the warrant, that he did not make sure that law-enforcement officers had arrested the right person, and he did not implement and maintain regularly accepted identification procedures, or other procedures, that would have prevented Morris' arrest. The allegations against Bexar County were that it employed Copeland, who acted on behalf of the Bexar County Sheriff's Department, a governmental unit of Bexar County. None of the Morrises' tort claims fall within the exceptions listed in section 101.021. Further, the TTCA does not waive immunity for claims "arising out of assault, battery, false imprisonment, or any other intentional tort...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986). Accordingly, sovereign immunity barred the Morrises' claims against Copeland and Bexar County. We hold that the trial court did not err if it granted summary judgment on the basis of sovereign immunity.

### 42 U.S.C. § 1983 Claims

To assert a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Leffall v. Dallas Indep. Sch. Dist.* 28 F.3d 521, 525 (5th Cir.1994). Section 1983 is not a source of substantive rights; rather, it provides a method for vindicating federal rights elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 269–71, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). The first step in any section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 269–71, 114 S.Ct. at 811; *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989).

■ The gist of the Morrises' allegations is that appellees violated Robert Scott Morris' rights secured by the Fourth Amendment, that is, his right to remain free from unreasonable searches and seizures of his person. Accordingly, appellees must have engaged in conduct that led to a deprivation of Morris' Fourth Amendment rights. The Morrises cannot establish a cause of action under section 1983 for three reasons: (1) no policy or custom led to any alleged constitutional violation; (2) a negligent act causing an unintended constitutional violation does not lead to a section 1983 claim; and (3) *respondeat superior* will not support recovery under section 1983 against a county.

■ In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that official policy [2] must become "the moving force of the constitutional violation" in order to establish the liability of a government body under section 1983. *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. *See Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Further, parties may sue local governments for constitutional deprivations visited pursuant to governmental "custom" even though the custom has not received formal approval through the body's official decision-making channels. *Monell*, 436 U.S. at 691–92, 98 S.Ct. at 2036–37. An

---

**2.** In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court said that " 'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. at 1299.

arrest based on probable cause, even though the wrong person is arrested, does not violate the Fourth Amendment. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72.

In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court concluded that the due process clause is not implicated and a section 1983 claim is not stated merely by a negligent act of an official that causes an unintended loss of, or injury to, life, liberty, or property. *Daniels*, 474 U.S. at 328, 106 S.Ct. at 662–63. *Daniels* expressly overruled prior case law to the effect that mere lack of due care by a state official may deprive a person of life, liberty, or property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *Respondeat superior* will not support a section 1983 claim against a county. *Monell*, 436 U.S. at 691–95, 98 S.Ct. at 2036–38.

Appellees' summary judgment evidence included the affidavits of Sheriff Copeland, Thomas Barry, and J. Anne Kelley. Copeland's affidavit covered three relevant topics. First, he did not participate in the investigation, indictment, arrest, and imprisonment of Morris. He did not personally participate in, nor did he authorize, approve, condone, or ratify, directly or indirectly, by policy, custom, or otherwise, Morris' imprisonment and arrest. Second, he did not have the responsibility, nor did any elected sheriff have the responsibility, to investigate the execution of warrants issued by Bexar County. Third, he did not personally participate in, and he did not approve, authorize, condone, or ratify, directly or indirectly, by policy, custom, or otherwise, any denial or infringement of the federal and state constitutional rights possessed by any individual.

Thomas Barry was the administrator of the Bexar County Adult Detention Center from July 1988 to January 1993.[3] He was aware of the policies that were in effect at that time. His affidavit showed that no policy, ordinance, regulation, or decision was officially adopted or promulgated by the Bexar County Sheriff's Office, nor was there any custom not formally approved through the administration or the Bexar County Sheriff's Department which led to the violations alleged by the Morrises in their lawsuit.

J. Anne Kelley was the intake-section chief of the Bexar County District Attorney's Office. She had worked as an assistant district attorney in that office since 1985.[4] She stated, in relevant part:

A warrant is facially valid if the individual arrested is actually the one named in the warrant. It appears, from a review of the criminal file, that the Plaintiff is the individual named in the warrant. The SID number is the one assigned to Robert Scott Morris and listed on the warrant, and a check of CJIS [Bexar County Criminal Justice Information System] reveals that a Robert Scott Morris with a SID number of 0492045 resides at 413 Clifford in Corpus Christi, Nueces County, Texas. The Plaintiffs' Original Petition also states that he resides at that address.

In this case, the summary judgment evidence showed that no official policy or custom became the moving force of any constitutional violation affecting Morris. Further, the warrant was facially valid because the person arrested, Robert Scott Morris, was the person named in the warrant. The level of culpability, negligence, if any, is insufficient to support the Morrises' claim. Further, a *respondeat superior* theory will not suffice to impose liability in a section 1983 claim on Bexar County.

We hold that the trial court did not err by granting summary judgment on the Morrises' section 1983 claim. We overrule points two, four, five, six, and eight.

Due to our disposition of the above points, we need not address the remaining points of error. TEX.R.APP. P. 90(a).

We AFFIRM the trial court's judgment.

---

3. This period covered the time (May 12, 1990) when the alleged incident occurred.

4. She subscribed the affidavit before a notary on August 13, 1993.