Hidalgo County, et al. v. Gonzalez
















NUMBER 13-03-00131-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

HIDALGO COUNTY AND DEPUTY SHERIFF
CARLOS PEREZ IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES,                                                        Appellants,

v.

ROGELIO GONZALEZ,                                                                  Appellee.
                                                                                                                       

On appeal from the 370th District Court of Hidalgo County, Texas.
                                                                                                                       

O P I N I O N

Before Justices Hinojosa, Yañez, and Garza
Opinion by Justice Hinojosa

          This is an interlocutory appeal from the trial court’s denial of a motion for summary
judgment filed by appellants, Hidalgo County and Deputy Sheriff Carlos Perez. In two
issues, appellants contend the trial court erred in denying their motion for summary
judgment because Deputy Perez is entitled to official immunity and Hidalgo County’s
sovereign immunity is intact because of Deputy Perez’s official immunity. We reverse and
render.
A. Jurisdiction
          Ordinarily, we do not have jurisdiction over appeals from interlocutory orders
because, under Texas procedure, appeals are allowed only from final orders or judgments. 
Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). However, section
51.014(a)(5) of the civil practice and remedies code expressly allows an interlocutory
appeal from an order that denies a motion for summary judgment that is based on an
assertion of immunity by an individual who is an officer or employee of the state or a
political subdivision of the state. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (Vernon
Supp. 2004). Therefore, we have jurisdiction and may address appellants’ issues.
B. Background
          On November 15, 1998, appellee, Rogelio Gonzalez, visited the emergency room
at Knapp Medical Center after causing acute injury to his hands. Gonzalez, who suffers
from mental illness,


 had been hitting the cement block walls of his home during a
hallucinatory episode where he believed he was being chased. When Gonzalez arrived
at the medical center, he informed the staff of his mental health history and his belief that
he had fractured several bones in his hands. The emergency room physician, Dr. Javier
Cortinas, was of the opinion that Gonzalez was in need of emergency psychiatric
commitment. Dr. Cortinas requested an emergency commitment order from the justice of
the peace. In the application for commitment, Dr. Cortinas stated that if Gonzalez was not
immediately restrained, there was an imminent risk that he would harm himself or others
because he was depressed and had suicidal ideations.
          Deputy Perez was assigned to execute the warrant and transport Gonzalez to the
Tropical Texas Center for Mental Health and Mental Retardation. When Deputy Perez
arrived, he was given the pertinent documents and was shown to the room where
Gonzalez was waiting. Gonzalez had been waiting in the emergency room for several
hours. Mario Alegria, a hospital security guard, was stationed in Gonzalez’s room.



          Gonzalez testified that when Deputy Perez entered the room, he was peacefully
communicating with Alegria and waiting for further medication. After Deputy Perez
announced that he was there to transport Gonzalez to the mental health facility, Gonzalez’s
first reaction was to find Dr. Cortinas and get an explanation. When Gonzalez approached
the doorway, Deputy Perez physically impeded Gonzalez’s exit and grabbed his hand in
an attempt to handcuff him. Gonzalez testified that Deputy Perez forcibly threw him to the
floor, placed his knee in Gonzalez’s back, which had been operated on recently, and
handcuffed his swollen and injured hands. Gonzalez testified that the handcuffs further
injured his hands and cut his wrists.
C. Summary Judgment
          The standard we follow in reviewing a summary judgment is well-established. A
movant for summary judgment has the burden to show that no genuine issue of material
fact exists and that he is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c). When deciding
whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true and all reasonable inferences made and
all doubts resolved in the nonmovant’s favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d
420, 425 (Tex. 1997). When a defendant moves for summary judgment based on an
affirmative defense such as official immunity, he has the burden to conclusively establish
each element of the defense as a matter of law. Velsicol Chem. Corp. v. Winograd, 956
S.W.2d 529, 530 (Tex. 1997).
          Claims against government employees in their individual capacities are separate
and distinct from claims against them in their official capacities. Vela v. Rocha, 52 S.W.3d
398, 403 (Tex. App.–Corpus Christi 2001, no pet.). A suit against a government employee
in his individual capacity seeks to impose personal liability on the employee for actions he
takes under color of state law. Ky. v. Graham, 473 U.S. 159, 163 (1985); Vela, 52 S.W.3d
at 403. In contrast, a suit against an employee in his official capacity seeks to impose
liability on the governmental entity that employs him. Graham, 473 U.S. at 166; Vela, 52
S.W.3d at 403. Each capacity involves a separate and distinct form of potential immunity. 
A government employee sued in his individual capacity may claim the protections of official
immunity. Vela, 52 S.W.3d at 403. An individual sued in an official capacity may enjoy the
protections of sovereign immunity to the same extent as those available to the person’s
employer. Nueces County v. Ferguson, 97 S.W.3d 205, 214-15 (Tex. App.–Corpus Christi
2002, no pet.). If the governmental unit would be immune due to sovereign immunity, so
is the governmental official sued in his official capacity. Id. Here, Deputy Perez was sued
in both his individual and official capacities. Thus, we take each analysis in turn.
1. Official Immunity
          By their first issue, appellants contend that Deputy Perez is entitled to official
immunity. Official immunity is an affirmative defense that protects governmental
employees from personal liability. Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994); Perry
v. Tex. A&I Univ., 737 S.W.2d 106, 110 (Tex. App.–Corpus Christi 1987, writ ref’d n.r.e.). 
Official immunity frees government officials to exercise their duties without fear of damage
suits which would consume their time and energy and might appreciably inhibit their
fearless, vigorous, and effective execution of their duties. Cameron County v. Carrillo, 7
S.W.3d 706, 709 (Tex. App.–Corpus Christi 1999, no pet.).
          Governmental employees are entitled to official immunity from suit arising from the
performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting
within the scope of their authority. City of Lancaster v. Chambers, 883 S.W.2d 650, 653
(Tex. 1994). To obtain summary judgment on the basis of official immunity, a
governmental employee must conclusively establish each of these elements. Univ. of
Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000). In deciding whether an employee’s
summary judgment proof conclusively establishes the official-immunity defense, we must
determine whether there are disputed facts material to its elements. Telthorster v. Tennell,
92 S.W.3d 457, 461 (Tex. 2002). In this case, it is undisputed that Deputy Perez was a
governmental employee acting within the scope of his authority. However, Gonzalez
disputes that Deputy Perez was performing a discretionary duty in good faith.
a. Discretionary Duty vs. Ministerial Act
          A function is ministerial if the law prescribes and defines the duties to be performed
with such precision and certainty that nothing is left to the discretion of the actor. 
Chambers, 883 S.W.2d at 654. On the other hand, actions requiring personal deliberation,
decision, and judgment are discretionary. Kassen, 887 S.W.2d at 9. The test to determine
whether a governmental employee’s act is discretionary focuses on whether the employee
is performing a discretionary function, not on whether the employee has discretion to do
an allegedly wrongful act when discharging that function. Chambers, 883 S.W.2d at 653.
          Gonzalez asserts that Deputy Perez was ordered to execute the mental health
warrant and transport him to the mental health facility. Gonzalez argues that because the
health and safety code prescribes the procedures for securing and executing a warrant for
an emergency detention of a mentally ill individual, Deputy Perez’s actions were purely
ministerial. However, the manner in which peace officers respond to a situation involves
personal deliberation, decision, and judgment. See Tex. Dep’t of Pub. Safety v. Perez, 905
S.W.2d 695, 698-99 (Tex. App.–Houston [14th Dist.] 1995, writ denied) (police officer’s
decision to handcuff motorist during traffic stop was discretionary). When a police officer
observes what he believes to be a situation which may pose a risk to his or the public’s
safety, he must decide whether or not to use some degree of force to avoid possible
escalation of the event into something more serious. Id.
          According to the protocol for transporting patients to a designated mental health
facility, “[t]he patient may not be physically restrained unless necessary to protect the
health and safety of the patient or of a person traveling with the patient.” Tex. Health &
Safety Code Ann. § 574.045(g) (Vernon 2003). When Deputy Perez arrived at the
hospital to transport Gonzalez to the mental health facility, Gonzalez became agitated. He
attempted to exit the room to locate Dr. Cortinas to get an explanation. Deputy Perez
impeded Gonzalez’s exit from the room because he believed Gonzalez was trying to flee. 
Gonzalez admitted that he used physical force in an attempt to prevent Deputy Perez from
restraining him. When faced with hostile resistence, Deputy Perez decided to use the
amount of force necessary to detain and handcuff Gonzalez for proper transportation to
the mental health facility. Accordingly, we conclude that the decision to restrain and
handcuff Gonzalez following his staunch resistence, in order to ensure his safety and the
safety of others, involved the personal deliberation and judgment of Deputy Perez, and was
thus, discretionary.
b. Good Faith
          To show good faith, Deputy Perez is required to prove that a reasonably prudent
officer, under the same or similar circumstances, could have believed that his conduct was
justified based on the information he possessed when the conduct occurred. Telthorster,
92 S.W.3d at 465; Hudson v. Vasquez, 941 S.W.2d 334, 337 (Tex. App.–Corpus Christi
1997, no writ). Deputy Perez need not prove that it would have been unreasonable not to
engage in the conduct, or that all reasonably prudent officers would have engaged in the
same conduct. Telthorster, 92 S.W.3d at 465. Rather, he must show only that a
reasonably prudent officer, under similar circumstances, might have reached the same
decision. Id.
          Good faith may be established by the testimony of the officer if the testimony is
clear, positive, direct, otherwise credible, free from contradiction and readily controvertible. 
Harless v. Niles, 100 S.W.3d 390, 398 (Tex. App.–San Antonio 2002, no pet.). Mere
conclusory statements by an affiant that a reasonable official could have taken the same
action are insufficient to establish good faith. Wadewitz v. Montgomery, 951 S.W.2d 464,
466-67 (Tex. 1997).
          In the instant case, whether a reasonably prudent officer in Deputy Perez’s position
could have perceived the need to handcuff Gonzalez depends on Gonzalez’s conduct
during the encounter. See City of San Antonio v. Garcia, 974 S.W.2d 756, 758 (Tex.
App.–San Antonio 1998, no pet.). Deputy Perez’s deposition testimony showed that upon
his arrival at the hospital, he reviewed the pertinent documents relating to Gonzalez’s
commitment. The application for an emergency commitment order reflected that Gonzalez
might be suicidal. Deputy Perez then proceeded to Gonzalez’s room, accompanied by the
emergency room nurse, Gloria Raya. After Deputy Perez introduced himself and
announced his purpose, Gonzalez became agitated. According to Alegria, Gonzalez
became upset and said that he was not going to go anywhere with anybody. Gonzalez
moved toward Deputy Perez in an apparent attempt to leave the room. Deputy Perez
believed that Gonzalez was trying to exit the room to avoid apprehension because of the
manner in which Gonzalez approached Deputy Perez, his agitated state, and his
statements. Deputy Perez physically impeded Gonzalez’s exit. Gonzalez admitted that
he used physical force to prevent Deputy Perez from restraining him. Deputy Perez then
grabbed Gonzalez’s extended arm and placed it behind his back in order to handcuff him. 
Gonzalez continued to resist aggressively. Deputy Perez took Gonzalez to the ground and
placed his knee in Gonzalez’s back in order to control and handcuff him. Raya testified
that during the struggle, Gonzalez was verbally threatening Deputy Perez and the hospital
staff. At some point during the struggle, the Weslaco Police Department was called for
assistance. Eventually, Gonzalez was handcuffed, and with the assistance of the security
guard and a Weslaco Police Officer, Gonzalez was escorted out of the hospital and into
Deputy Perez’s vehicle.
          In his affidavit, Deputy Perez states that he used only the amount of force necessary
to apprehend Gonzalez to transport him to the mental health facility. Deputy Perez
believed that force was necessary to secure Gonzalez’s safety; and only after Gonzalez
reacted aggressively was force necessary to ensure the safety of the hospital personnel
in the emergency room. Raya testified that it was fairly common for the hospital to handle
mental health commitments. She stated that most of these commitments went unwillingly
and needed to be handcuffed while they were escorted to the vehicle.
          In light of the above summary judgment evidence, we conclude that a reasonably
prudent officer, under the same or similar circumstances, could have believed that the
decision to restrain and handcuff Gonzalez was justified based on the information the
officer possessed when this conduct occurred. See Telthorster, 92 S.W.3d at 465;
Hudson, 941 S.W.2d at 337. Therefore, we hold that Deputy Perez met his burden to
show good faith for the purpose of establishing official immunity.
          To controvert Deputy Perez’s showing of good faith, Gonzalez was required to prove
that no reasonable officer in Deputy Perez’s position could have believed that the facts
were such that they justified his conduct. Telthorster, 92 S.W.3d at 465; Carrillo, 7 S.W.3d
at 711. Thus, to refute Deputy Perez’s summary judgment proof of good faith, Gonzalez
was required to submit proof that no reasonable police officer in the deputy’s position could
have thought the facts were such that they justified restraining and handcuffing him.
          Gonzalez responded to appellants’ summary judgment evidence with excerpts from
his own deposition and excerpts from Alegria’s deposition. Gonzalez asserts that prior to
Deputy Perez’s arrival, he was peacefully waiting with Alegria. Alegria’s deposition
testimony shows that prior to Deputy Perez’s arrival, Gonzalez was not violent or
threatening in any manner. Gonzalez contends that Deputy Perez unlawfully manhandled
him without provocation. Alegria also testified that Deputy Perez’s conduct was
“excessive” and that the situation “could have been taken care of without any physical
encounter.”
          Gonzalez’s summary judgment evidence focuses on Gonzalez’s demeanor prior to
the arrival of Deputy Perez. It fails to discuss the circumstances of this case at the time
Deputy Perez’s conduct occurred. See City of San Antonio, 974 S.W.2d at 758. Gonzalez
admitted that he used physical force in an attempt to prevent Deputy Perez from restraining
him. Although Gonzalez relies upon Alegria’s statement that Deputy Perez’s conduct was
excessive, Gonzalez failed to present any summary judgment evidence that no reasonable
officer could have believed, under the circumstances, that it was reasonable for Deputy
Perez to restrain and handcuff Gonzalez. See Telthorster, 92 S.W.3d at 465; Hudson, 941
S.W.2d at 337.
          We hold that Deputy Perez established the affirmative defense of official immunity
as a matter of law. Accordingly, we hold the trial court erred in denying appellants’ motion
for summary judgment based on the ground of official immunity. We sustain appellants’
first issue.
2. Sovereign Immunity
          A suit against an official in his official capacity is not a suit against the official, but
is rather a suit against the governmental entity he represents. Graham, 473 U.S. at 165-66; Ferguson, 97 S.W.3d at 214. Hidalgo County, as a political subdivision of the State,
generally enjoys sovereign immunity from tort liability, unless immunity has been waived
by the Texas Tort Claims Act (“Act”). See County of Cameron v. Brown, 80 S.W.3d 549,
554 (Tex. 2002); see also Tex. Civ. Prac. & Rem. Code Ann. § 101.025 (Vernon 1997). 
The Act expressly waives sovereign immunity in three general areas: “use of publicly
owned automobiles, premises defects, and injuries arising out of conditions or use of
property.” Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 611 (Tex. 2000); see Tex. Civ.
Prac. & Rem. Code Ann. § 101.021 (Vernon 1997).
          Conversely, a governmental entity’s sovereign immunity remains intact and it cannot
be held liable under section 101.021 based on respondeat superior when the governmental
employee enjoys official immunity. City of Harlingen v. Vega, 951 S.W.2d 25, 32 (Tex.
App.–Corpus Christi 1997, no writ); see DeWitt v. Harris County, 904 S.W.2d 650, 653
(Tex. 1995). To that extent, a sovereign immunity claim may be “based on” an individual’s
assertion of official immunity and falls within the scope of section 51.014(a)(5) of the civil
practice and remedies code. Vega, 951 S.W.2d at 32 (citing City of Houston v. Kilburn,
849 S.W.2d 810, 812 (Tex. 1993)).
          Hidalgo County’s sovereign immunity claim is “based on” Deputy Perez’s assertion
of official immunity. Because Deputy Perez established the affirmative defense of official
immunity as a matter of law, we hold that Hidalgo County established the affirmative
defense of sovereign immunity as a matter of law. Likewise, as a public official sued in his
official capacity, Deputy Perez is protected by the same sovereign immunity enjoyed by the
state agency he represents. Morris v. Copeland, 944 S.W.2d 696, 698 (Tex. App.–Corpus
Christi 1997, no writ). Accordingly, we hold the trial court erred in denying appellants’
motion for summary judgment based on the ground of sovereign immunity. We sustain
appellants’ second issue.
          We reverse the trial court’s order denying appellants’ motion for summary judgment. 
We grant appellants’ motion for summary judgment and render judgment that Gonzalez
take nothing by his suit.
 
                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Opinion delivered and filed this the
26th day of February, 2004.