**Opinion issued June 18, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00315-CV

———————————

**ADRIAN GARCIA, IN HIS OFFICIAL CAPACITY AS HARRIS COUNTY SHERIFF, AND GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS, Appellants**

**V.**

**FELIX MICHAEL KUBOSH AND CARL R. PRUETT, Appellees**

---

**On Appeal from the 127th District
Harris County, Texas
Trial Court Case No. 2009-82195**

---

## OPINION

Felix Michael Kubosh and Carl R. Pruett, both bail bondsmen, sued Harris

County Sheriff Adrian Garcia and Texas Attorney General Greg Abbott,

challenging the constitutionality of a statutorily-imposed fee on sureties who post bail bonds. After the trial court dismissed their original lawsuit for want of prosecution, the bondsmen initiated the bill of review proceeding from which this interlocutory appeal arises.[1] The Sheriff and Attorney General contend the trial court lacks jurisdiction over the bill of review proceeding because (1) the bondsmen failed to make a prima facie showing of a meritorious claim in their bill of review petition and (2) the doctrines of standing and sovereign immunity bar the bondsmen's claim. We reverse and remand with instructions that the bondsmen's surviving claim be dismissed for want of jurisdiction.

**Background**

Section 41.258 of the Government Code requires all sureties posting a bail bond to pay a fee of $15 per bond, not to exceed $30 for all bail bonds posted for one individual at one time.[2] TEX. GOV'T CODE ANN. § 41.258 (West 2011). The

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011) (permitting interlocutory appeal from order granting or denying plea to jurisdiction filed by governmental unit).

[2] A "bail bond" is a "written undertaking entered into by the defendant and the defendant's sureties for the appearance of the principal therein before a court or magistrate to answer a criminal accusation; provided, however, that the defendant on execution of the bail bond may deposit with the custodian of funds of the court in which the prosecution is pending current money of the United States in the amount of the bond in lieu of having sureties signing the same." TEX. CODE CRIM. PROC. ANN. art. 17.02 (West Supp. 2011). A "surety bond" is a written undertaking entered into by an individual or business other than the accused for the satisfaction of the bond amount if the accused fails to appear. *See id.* arts. 17.02, 17.09, 17.11; *see also* TEX. OCC. CODE ANN. § 1704.001(2) (West 2011).

2

$15 fee applies to all offenses except class C misdemeanors, which are punishable by fine only. *Id.* § 41.258(b). The $15 fee is refundable if the state declines to prosecute or the grand jury fails to indict the individual. *Id.* § 41.258(f). The court, judge, magistrate, peace officer, or other officer imposing the bail bond is responsible for collecting the $15 fee, which is initially deposited into the county treasury. *Id.* § 41.258(b), (c). The funds collected by the counties are sent to the Comptroller on a quarterly basis, with each county being allowed to retain ten percent of its funds and all of the interest on its funds. *Id.* § 41.258(e)(2), (g).

The Comptroller then deposits two-thirds of the funds into the "assistant prosecutor supplement fund" and one-third of the funds into the "fair defense account." *Id* § 41.258 (i). The "assistant prosecutor supplement fund" provides longevity salary supplements for eligible felony prosecutors; the "fair defense account" funds the Texas Indigent Defense Commission and the Office of Capital Writs. *See* TEX. GOV'T CODE ANN. § 41.255 (West 2011) (describing assistant prosecutor supplement fund); TEX. GOV'T CODE ANN. § 79.031 (West Supp. 2011) (describing fair defense account). At the end of each fiscal year, the Comptroller may transfer any unexpended amounts in excess of $1.5 million to the general revenue fund. *Id.* § 41.258(j).

In their original lawsuit, the bondsmen and a former criminal defendant,

3

Daisy Howard,[3] challenged section 41.258 on federal and state constitutional grounds, requesting declaratory and injunctive relief. After more than three years of inactivity, the trial court dismissed the suit for want of prosecution. The bondsmen did not seek a new trial or appeal the dismissal order. Instead, they timely petitioned the trial court for a bill of review, alleging that they did not receive notice of the dismissal hearing. In the bill of review proceeding, the bondsmen again sought declaratory and injunctive relief, alleging violations of (1) their federal constitutional rights to freedom to petition and speak, equal protection and due process of law, and protection against excessive bail and (2) their state constitutional rights to open courts and protection against excessive bail, equal rights and due course of law, and (3) separation of powers.[4]

In a combined summary judgment motion and plea to the jurisdiction, the Sheriff and Attorney General sought the dismissal of the case for lack of standing and the failure to state a claim as a matter of law. The trial court denied the

---

[3]    We reference Howard and her claims for context alone. Howard satisfied the terms of her deferred adjudication during the pendency of the underlying lawsuit, thereby negating her status as a criminal defendant. Howard has not appealed the dismissal of her claims for lack of standing.

[4]    The bondsmen further alleged that the $15 fee constitutes an unconstitutional occupation tax under the Texas Constitution, but they have abandoned that claim on appeal.

combined motion with respect to the bondsmen's due process claim[5] and granted

the motion "in all other respects." Specifically, the trial court determined that

Howard, who was not obligated to pay the $15 fee, had no standing to challenge

the fee's constitutionality, and the bondsmen did not have "third party" standing to

challenge the fee on behalf of Howard and other criminal defendants. The trial

court then observed that the bondsmen had only one claim based on traditional,

rather than "third party," standing: "a claim under the Texas and U.S. Constitutions

that they were being deprived of their tangible property—the $15 [fee]—without

due course or process of law by operation of the statute." The trial court denied the

combined motion with respect to this claim only:

> [The Sheriff and Attorney General's] Motion is DENIED with respect
> to [the bondsmen's] claims for deprivation of property without due
> course or due process of the law. This Court DECLINES to rule on
> [the bondsmen's] claim that [the $15 fee] constitutes an
> unconstitutional occupation tax under Art. III [sic] § 3 and Art. VIII §
> 2 of the Texas Constitution. [The Sheriff and Attorney General's]
> Motion is GRANTED in all other respects.

The Sheriff and Attorney General appeal the trial court's denial of their

jurisdictional challenge to the bondsmen's due process claim;[6] the bondsmen do

---

[5] The trial court also denied the combined motion with respect to the bondsmen's occupation tax claim. We need not address that claim here because the bondsmen have abandoned it.

[6] The Sheriff and Attorney General also appealed the trial court's denial of their jurisdiction challenge to the bondsmen's occupation tax claim, but the bondsmen abandoned that claim on appeal.

5

not appeal the trial court's dismissal of their remaining claims.

## Interlocutory Jurisdiction

The Sheriff and Attorney General challenge the trial court's jurisdiction on two grounds: standing and sovereign immunity. As preliminary matter, we must determine whether we have interlocutory jurisdiction[7] over the sovereign-immunity-based challenge, which was not considered by the trial court and is not the subject of the trial court's appealed-from order.[8]

Section 51.014(a)(8) of the Civil Practices and Remedies Code grants this Court interlocutory jurisdiction over "an interlocutory order of a district court" that "grants or denies a [governmental unit's] plea to the jurisdiction." TEX. CIV. PRAC.

---

[7] Generally, appellate courts only have jurisdiction to review a trial court's rulings after entry of a judgment finally disposing of the case. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex. 2001); *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex. 1998). Interlocutory appellate jurisdiction is an exception to this general rule; it enables us to review a trial court's ruling while the case is still pending before the trial court. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840−41 (Tex. 2007). We have interlocutory jurisdiction only when the Legislature authorizes it. *Id.* We review the legislative grants of interlocutory jurisdiction strictly to affect the Legislature's intent that such statutes create "a narrow exception to the general rule that only final judgments are appealable." *Id.* (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)).

[8] The Sheriff and Attorney General initially raised the issue of sovereign immunity in a combined plea to the jurisdiction and motion for summary judgment filed on October 1, 2010. After the Sheriff and the Attorney General filed their combined motion, the bondsmen amended their pleadings. The Sheriff and Attorney General filed a second, combined jurisdictional plea and summary judgment motion on February 25, 2011, which did not include any argument regarding sovereign immunity. The trial court ruled on the second motion and thus did not decide the sovereign immunity issue.

& REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011). This Court has interpreted section 51.014(a)(8) as granting interlocutory jurisdiction over newly-raised challenges to a trial court's subject-matter jurisdiction over the case in which the appealed-from order was issued. *Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 137 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (observing that challenges to subject-matter jurisdiction generally may be raised for the first time on appeal). Thus, in this interlocutory appeal, we consider the Sheriff and Attorney General's contention that sovereign immunity from suit deprives the trial court of subject-matter jurisdiction over the bondsmen's surviving claim. Because our holding on this issue is dispositive, we do not reach the issue of standing.

**Standard of Review**

Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443−44; *Austin & N.W.R. Co. v. Cluck*, 77 S.W. 403, 405 (Tex. 1903) ("[T]here can be no doubt that the courts of Texas must look to the Constitution of this state, the enactments of the Legislature, and the common law for their authority to proceed[.]"). The existence of subject-matter jurisdiction is a question of law, which we must decide de novo. *See State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

When, as here, the jurisdictional challenge is to the pleadings, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226; *see also State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (instructing courts to first review "the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists"); *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (explaining that plaintiff has burden to allege facts affirmatively demonstrating trial court's subject-matter jurisdiction). We construe the pleadings liberally, looking to the pleader's intent. *Villareal v. Harris Cnty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not reveal incurable jurisdictional defects, courts should afford the plaintiff an opportunity to re-plead. *Miranda*, 133 S.W.3d at 226–27. Conversely, if the pleadings affirmatively negate the existence of jurisdiction, then the plea should be sustained and the cause dismissed without an opportunity to re-plead. *Id.* at 227; *see also Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("A trial court must grant a plea to the jurisdiction . . . when the pleadings do not state a cause of action upon which the trial court has jurisdiction.").

## Immunity from Suit

Under the doctrine of sovereign immunity, parties may not sue the sovereign

without its consent. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006). "Although this rule was originally justified by the fiction that 'the king can do no wrong,' in modern times its 'purpose is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments[.]'" *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citations omitted). Sovereign immunity has two components: (1) immunity from suit, which deprives a trial court of subject-matter jurisdiction over a suit to which the State has not consented, and (2) immunity from liability, which protects the State from judgments against it even when it has consented to suit. *See City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997)*, superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 593 (Tex. 2001). Because immunity from suit defeats a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *See id.*; *City of Houston v. Gunn*, No. 01-11-00034-CV, 2011 WL 6938539, at \*1 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, no pet.). Unlike immunity from suit, however, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638−39 (Tex. 1999); *see also Miranda*, 133 S.W.3d at 224.

"Governmental immunity operates like sovereign immunity to afford similar

protection to subdivisions of the State, including counties[.]" *Sykes*, 136 S.W.3d at 638. Public officials sued in their official capacities, like the Sheriff and Attorney General, are protected by the same sovereign or governmental immunity as the governmental unit they represent. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007) (holding that "an official sued in his official capacity would assert sovereign immunity[,]" and that "[w]hen a state official files a plea to the jurisdiction, the official is invoking the sovereign immunity from suit held by the government itself"); *see also Morris v. Copeland*, 944 S.W.2d 696, 698−99 (Tex. App.—Corpus Christi 1997, no pet.) (holding that suit against sheriff in his official capacity was suit against county and both were immune from suit by virtue of governmental immunity).

## A.     The State has waived its immunity from suits seeking equitable relief for violations of constitutional rights

By their due process claim, the bondsmen seek declaratory and injunctive relief from all state action to collect section 41.258's $15 fee. The only monetary award the bondsmen seek is attorney's fees under the declaratory judgment statute.

Texas law generally does not shield state officials from suits for equitable relief for a violation of constitutional rights. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (explaining that State has waived sovereign immunity for suits seeking declarations regarding validity of statutes); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391−92 (Tex. 2007) (concluding that suit for injunctive

10

relief stemming from alleged constitutional violations may be filed against governmental entity); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (distinguishing between suits seeking to declare statute unconstitutional and suits seeking damages as remedy for allegedly unconstitutional act, and concluding that only second type of suit is impermissible); *see also Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334−36 (Tex. App.—Austin 2009, pet. denied) (observing that "private parties may seek declaratory relief against state officials who are acting pursuant to an allegedly unconstitutional law"). But the bondsmen's request for declaratory relief "does not enlarge a court's jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction." *City of Paris v. Abbott*, 360 S.W.3d 567, 577 (Tex. App.—Texarkana 2011, pet. denied); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 370−71 (Tex. 2009) ("[A] litigant's request for declaratory relief does not alter a suit's underlying nature. It is well settled that private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages . . . as a declaratory-judgment claim.") (quotation omitted).

**B.     To rely on the waiver, the bondsmen must plead a facially valid constitutional claim**

The Sheriff and Attorney General urge us to hold that the waiver of sovereign immunity for constitutional claims does not apply to this case because the bondsmen failed to plead a viable due process claim. While we are mindful that

11

a plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that the [bondsmen] are required to put on their case simply to establish jurisdiction[,]" the bondsmen need do more than merely name a cause of action and assert the existence of a constitutional violation. *See generally Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering substance of equal-protection claim against Secretary of State in reviewing ruling on plea to jurisdiction and explaining that Secretary retained immunity from suit unless plaintiffs pleaded "viable claim"); *Dir. of Dept. of Agric. & Env't v. Printing Indus. Assoc. of Tex.*, 600 S.W.2d 264, 265 (Tex. 1980) (rejecting lower court's conclusion that plaintiff need only plead existence of invasion of rights to bring suit against governmental defendant); *Abbott*, 360 S.W.3d at 583 (noting that governmental defendant remains immune from suit absent plaintiff's pleading of viable claim). To state a claim within the waiver of sovereign immunity, the bondsmen must plead a facially valid constitutional claim. *See Andrade*, 345 S.W.3d at 11; *City of Houston v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting that trial court must grant political subdivision's plea to jurisdiction if plaintiff's constitutional claim is facially invalid); *Dewhurst v. Hendee*, 253 S.W.3d 320, 338 (Tex. App.—Austin 2008, pet. denied) (concluding that trial court properly granted jurisdictional plea because conduct alleged by plaintiff did not constitute violation of constitutional limitations

12

on appropriations of state tax revenues); *City of Dallas v. Blanton*, 200 S.W.3d 266, 272 (Tex. App.—Dallas 2006, no pet.) (holding that City's sovereign immunity was not waived by plaintiffs allegation of invalid constitutional takings claim); *cf. Little-Tex Insulation Co.*, 39 S.W.3d at 599 (holding that trial court did not error by dismissing takings claims for want of jurisdiction because plaintiff failed to allege that state university's withholding of payments from building contractor amounted to "anything other than its colorable contract rights").

## C.    The bondsmen have not pleaded a facially valid constitutional claim

Both the federal and state constitutions guarantee due process of law. *See* U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law"); TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land.").[9] Although due process of law involves both procedural and substantive guarantees, *see, e.g.*, *Pickett v. Tex. Mut. Ins. Co.*, 239 S.W.3d 826, 834 (Tex. App.—Austin 2007, no pet.), the bondsmen stated during oral argument before this

---

[9]    The due-process guarantees in the United States and Texas Constitutions are textually different, but we apply the same analysis to both claims. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (explaining that although Texas Constitution refers to "due course" rather than U.S. Constitution's "due process," the phrases are not meaningfully distinct and federal interpretations of due process are persuasive authority when interpreting Texas's "due course" guarantee).

Court that they are not pursuing a procedural due process claim. Accordingly, we limit our discussion to issues of substantive due process.

### 1. The bondsmen's surviving claim is limited to a due process claim for deprivation of property

With respect to substantive due process, the parties dispute the scope of the bondsmen's surviving claim. Substantive due process protects against the arbitrary and oppressive exercise of government power over a person's life, liberty, or property, regardless of the fairness of the procedures used to implement the government action. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845−46, 118 S. Ct. 1708, 1716 (1998) (noting that government acts arbitrarily when it exercises power without any reasonable justification in service of legitimate governmental objective); *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 659 (Tex. 2004). The "liberty" protected by due process "includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 2267 (1997). Due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 720, 117 S.Ct. at 2267.

According to the bondsmen, their surviving due process claim incorporates violations of their fundamental rights and liberty interests set forth in (1) the First Amendment of the United States Constitution, as applied to state action through the Fourteenth Amendment's due process clause, and (2) sections 8, 11, 13, and 27

14

of the Texas Bill of Rights, as applied through the due process clause in Fourteenth Amendment of the United States Constitution and the due process clause in article I, section 19 of the Texas Constitution.[10] The Sheriff and Attorney General, however, contend that the trial court dismissed all claims for the deprivation of liberty interests, leaving only the bondsmen's complaint regarding the deprivation of a property interest. Applying the same rules of interpretation as we would apply to ascertain the meaning of other written instruments, we conclude the Sheriff and Attorney General accurately state the scope of the trial court's order. *See Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) ("The same rules of interpretation apply in construing the meaning of a court order of judgment as in ascertaining the meaning of other written instruments. The entire contents of the

---

[10] *See* U.S. CONST. amend I ("Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."); U.S. CONST. amend XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"); TEX. CONST. art. I, § 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject[.]"); TEX. CONST. art. I, § 11 ("All prisoners shall be bailable by sufficient sureties, . . . ."); TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."); TEX. CONST. art. I, § 27 ("The citizens shall have the right . . . [to] apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."); *see also* TEX. CONST. art. I, § 29 ("To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.").

instrument and record should be considered. The judgment is to be read as a whole."); *see also Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 621 n.23 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (op. on reh'g); *Mai v. State*, 189 S.W.3d 316, 320 (Tex. App.—Fort Worth 2006, pet. ref'd).

The trial court's order recites that the trial court considered "all claims made" in the bondsmen's live pleading and consists of ten pages of detailed analysis. The relief requested in the motion on which the trial court entered its order was dismissal of all claims in the case, whether pleaded individually or on behalf of third parties. And no party disputes that the trial court dismissed all claims asserting the interests of third parties, here, the criminal defendants for whom the bondsmen write bonds. In the order, the trial court held that the bondsmen lacked third party standing and then expressly stated that the bondsmen had "only one claim" that rested on traditional, rather than third party, standing. The trial court defined this claim as "a claim under the Texas and U.S. Constitutions that [the bondsmen] were being deprived of their tangible property—$15 per bail bond—without due course or process of law by operation of the statute." It then denied the Sheriff and Attorney General's request for dismissal of the bondsmen's "claims for deprivation of property without due course or due

16

process of law" and granted the request "in all other aspects."[11]

Thus, twice in its order the trial court defined the bondsmen's sole surviving claim as a claim for the deprivation of a property interest: (1) once as a part of its reasoning and (2) again in its holding. Considering this plain language, we conclude that the bondsmen's claims for incorporation of fundamental liberty interests through the due process guarantees in the federal and state constitutions did not survive the trial court's ruling—which the bondsmen did not appeal—but were instead disposed of in that part of the order granting the Sheriff and Attorney General's combined motion "in all other respects." The bondsmen's only surviving due process claim is a claim for deprivation of the "$15 per bail bond" as a tangible property interest.

### 2. The Bondsmen have not pleaded a facially valid due process claim for deprivation of property

Having determined the scope of the surviving due process claim, we now turn to the bondsmen's due process pleadings. The bondsmen generally allege that the $15 fee is constitutionally infirm because the bondsmen "lose the money that they pay as this fee/cost" and are thus deprived of "a tangible property interest"— i.e., their bail bonding business suffers economic loss by the State's imposition of the $15 fee. The bondsmen further complain that the $15 fee is used unlawfully to

---

[11] As previously noted, the trial court also declined to rule on the bondsmen's occupation tax claim, which the bondsmen have abandoned on appeal.

fund prosecutor longevity pay and indigent defense; according to them, the revenue generated can only be used lawfully for the administration of bail bond programs.

Certainly, the Legislature does not unconstitutionally deprive a person of property every time it imposes a fee on individuals doing business with the State of Texas. The bondsmen do not explain why—or cite to any authority establishing that—this particular fee unconstitutionally burdens their property interests. Without such explanation of why the imposition of the $15 fee rises to the level of a constitutional violation, the bondsmen have not pleaded a facially valid due process claim. And, it does not appear to us that this is a pleading defect that the bondsmen can cure by amending the petition to allege additional facts.

The $15 fee imposed by section 41.258 is a cost of doing business as a surety who writes bail bonds on behalf of criminal defendants in this state. According to the bondsmen, the $15 fee decreases the income generated by their business. At the time it enacted section 41.258, the Legislature imposed the fee prospectively only; thus, the Legislature did not deprive the bondsmen of any income previously generated. *See* TEX. GOV'T CODE ANN. § 41.258. And the $15 fee does not necessarily impact the bondsmen's bottom-line—the statute does not prohibit them from passing the fee along to their clients. Indeed, some bondsmen do pass the fee along to their clients, while others—apparently believing they

18

receive some competitive advantage in not doing so—bear the expense themselves.

The United States Supreme Court has abandoned the sweeping protection of economic rights through substantive due process. *See, e.g.*, *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S. Ct. 1028, 1031 (1963) ("[T]hat due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely [ ] has long since been discarded."); *Williamson v. Lee Optical*, 348 U.S. 483, 488, 75 S. Ct. 461, 464−65 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. . . . 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.'") (citations omitted). Today, we presume economic regulations are constitutional; we apply a "rational basis" test, under which the party challenging the statute's constitutionality must show that the Legislature acted arbitrarily and irrationally in enacting the statute. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S. Ct. 2882, 2892 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."); *Barshop v. Medina Cnty. Underground Water*

*Conservation Dist.*, 925 S.W.2d 618, 631−32 (Tex. 1996) (noting that Texas courts apply rational-basis test when analyzing constitutionality of regulations affecting economic rights); *Williams v. Tex. Tech. Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993) ("To state a substantive due process claim[,] a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest."). Whether a "rational relation" exists is a question of law. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998); *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172 n.6 (5th Cir. 1996); *Pierce v. Tex. Racing Comm'n*, 212 S.W.3d 745, 757 (Tex. App.—Austin 2006, pet. denied).

Texas undoubtedly has a legitimate interest in the proper administration of its criminal justice system. The bondsmen are participants in the criminal justice system, as their business flows from the arrests and prosecutions of individuals who need bail bonds for pretrial release. The $15 fee is used to support the criminal justice system through payment of prosecutor longevity pay and indigent defense. We therefore conclude that the $15 imposed by section 41.258 is rationally related to a legitimate state interest, and we hold that the bondsmen have not pleaded a substantive due process claim for which the State has waived sovereign immunity.

We sustain the Sheriff and Attorney General's second issue.[12]

## Conclusion

We hold that the bondsmen's claims "for deprivation of property without due course or due process of law" are the only (non-abandoned) claims that survived under the trial court's order and that the trial court lacks jurisdiction over those claims. We therefore reverse the portion of the trial court's order that denies the Sheriff and Attorney General's combined motion "with respect to [the bondsmen's] claims for deprivation of property without due course or due process of law" and remand the case to the trial court with instructions to dismiss that claim for lack of jurisdiction. We further instruct the trial court to dismiss the bondsmen's occupation tax claim without prejudice.

Harvey Brown
Justice

Panel consists of Justices Higley, Sharp, and Brown.

Justice Brown, concurring.

---

[12]   Our disposition of the Sheriff and Attorney General's second issue renders our consideration of their other issues unnecessary.

21