**HIDALGO COUNTY and Deputy Sheriff Carlos Perez in his Official and Individual Capacities, Appellants,**

v.

**Rogelio GONZALEZ, Appellee.**

No. 13–03–00131–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 26, 2004.

Amy L. Gonzales and Eileen Leeds, Willette & Guerra, Brownsville, for Appellants.

James C. Harrington and Sheri Joy Nasya Tolliver, Austin, for Rogelio Gonzalez.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice HINOJOSA.

This is an interlocutory appeal from the trial court's denial of a motion for summary judgment filed by appellants, Hidalgo County and Deputy Sheriff Carlos Perez. In two issues, appellants contend the trial court erred in denying their motion for summary judgment because Deputy Perez is entitled to official immunity and Hidalgo County's sovereign immunity is intact because of Deputy Perez's official immunity. We reverse and render.

### A. JURISDICTION

Ordinarily, we do not have jurisdiction over appeals from interlocutory orders because, under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). However, section 51.014(a)(5) of the civil practice and remedies code expressly allows an interlocutory appeal from an order that denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2004). Therefore, we have jurisdiction and may address appellants' issues.

## B. BACKGROUND

On November 15, 1998, appellee, Rogelio Gonzalez, visited the emergency room at Knapp Medical Center after causing acute injury to his hands. Gonzalez, who suffers from mental illness,[1] had been hitting the cement block walls of his home during a hallucinatory episode where he believed he was being chased. When Gonzalez arrived at the medical center, he informed the staff of his mental health history and his belief that he had fractured several bones in his hands. The emergency room physician, Dr. Javier Cortinas, was of the opinion that Gonzalez was in need of emergency psychiatric commitment. Dr. Cortinas requested an emergency commitment order from the justice of the peace. In the application for commitment, Dr. Cortinas stated that if Gonzalez was not immediately restrained, there was an imminent risk that he would harm himself or others because he was depressed and had suicidal ideations.

Deputy Perez was assigned to execute the warrant and transport Gonzalez to the Tropical Texas Center for Mental Health and Mental Retardation. When Deputy Perez arrived, he was given the pertinent documents and was shown to the room where Gonzalez was waiting. Gonzalez had been waiting in the emergency room for several hours. Mario Alegria, a hospital security guard, was stationed in Gonzalez's room.[2]

Gonzalez testified that when Deputy Perez entered the room, he was peacefully communicating with Alegria and waiting for further medication. After Deputy Perez announced that he was there to trans-port Gonzalez to the mental health facility, Gonzalez's first reaction was to find Dr. Cortinas and get an explanation. When Gonzalez approached the doorway, Deputy Perez physically impeded Gonzalez's exit and grabbed his hand in an attempt to handcuff him. Gonzalez testified that Deputy Perez forcibly threw him to the floor, placed his knee in Gonzalez's back, which had been operated on recently, and handcuffed his swollen and injured hands. Gonzalez testified that the handcuffs further injured his hands and cut his wrists.

## C. SUMMARY JUDGMENT

The standard we follow in reviewing a summary judgment is well-established. A movant for summary judgment has the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see* TEX.R. CIV. P. 166a(c). When deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and all reasonable inferences made and all doubts resolved in the nonmovant's favor. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). When a defendant moves for summary judgment based on an affirmative defense such as official immunity, he has the burden to conclusively establish each element of the defense as a matter of law. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997).

■■■ Claims against government employees in their individual capacities are separate and distinct from claims against

---

1. Gonzalez suffered a disabling back trauma while performing manual labor nearly ten years before this incident and has undergone extensive operations on his back. Since the accident, Gonzalez has struggled with acute anxiety and depression.

2. According to the emergency room nurse, Gloria Raya, she stationed Mario Alegria, the hospital security guard, in Gonzalez's room after Gonzalez threatened to start throwing things if he was not given pain medication soon.

them in their official capacities. *Vela v. Rocha*, 52 S.W.3d 398, 403 (Tex.App.-Corpus Christi 2001, no pet.). A suit against a government employee in his individual capacity seeks to impose personal liability on the employee for actions he takes under color of state law. *Ky. v. Graham*, 473 U.S. 159, 163, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Vela*, 52 S.W.3d at 403. In contrast, a suit against an employee in his official capacity seeks to impose liability on the governmental entity that employs him. *Graham*, 473 U.S. at 166, 105 S.Ct. 3099; *Vela*, 52 S.W.3d at 403. Each capacity involves a separate and distinct form of potential immunity. A government employee sued in his individual capacity may claim the protections of official immunity. *Vela*, 52 S.W.3d at 403. An individual sued in an official capacity may enjoy the protections of sovereign immunity to the same extent as those available to the person's employer. *Nueces County v. Ferguson*, 97 S.W.3d 205, 214–15 (Tex.App.-Corpus Christi 2002, no pet.). If the governmental unit would be immune due to sovereign immunity, so is the governmental official sued in his official capacity. *Id.* Here, Deputy Perez was sued in both his individual and official capacities. Thus, we take each analysis in turn.

### 1. *Official Immunity*

■ By their first issue, appellants contend that Deputy Perez is entitled to official immunity. Official immunity is an affirmative defense that protects governmental employees from personal liability. *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994); *Perry v. Tex. A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). Official immunity frees government officials to exercise their duties without fear of damage suits which would consume their time and energy and might appreciably inhibit their fearless,

vigorous, and effective execution of their duties. *Cameron County v. Carrillo*, 7 S.W.3d 706, 709 (Tex.App.-Corpus Christi 1999, no pet.).

■ Governmental employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these elements. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000). In deciding whether an employee's summary judgment proof conclusively establishes the official-immunity defense, we must determine whether there are disputed facts material to its elements. *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex.2002). In this case, it is undisputed that Deputy Perez was a governmental employee acting within the scope of his authority. However, Gonzalez disputes that Deputy Perez was performing a discretionary duty in good faith.

### a. *Discretionary Duty vs. Ministerial Act*

■ A function is ministerial if the law prescribes and defines the duties to be performed with such precision and certainty that nothing is left to the discretion of the actor. *Chambers*, 883 S.W.2d at 654. On the other hand, actions requiring personal deliberation, decision, and judgment are discretionary. *Kassen*, 887 S.W.2d at 9. The test to determine whether a governmental employee's act is discretionary focuses on whether the employee is performing a discretionary function, not on whether the employee has discretion to do an allegedly wrongful act when discharg-

ing that function. *Chambers*, 883 S.W.2d at 653.

■ Gonzalez asserts that Deputy Perez was ordered to execute the mental health warrant and transport him to the mental health facility. Gonzalez argues that because the health and safety code prescribes the procedures for securing and executing a warrant for an emergency detention of a mentally ill individual, Deputy Perez's actions were purely ministerial. However, the manner in which peace officers respond to a situation involves personal deliberation, decision, and judgment. *See Tex. Dep't of Pub. Safety v. Perez*, 905 S.W.2d 695, 698–99 (Tex.App.-Houston [14th Dist.] 1995, writ denied) (police officer's decision to handcuff motorist during traffic stop was discretionary). When a police officer observes what he believes to be a situation which may pose a risk to his or the public's safety, he must decide whether or not to use some degree of force to avoid possible escalation of the event into something more serious. *Id.*

According to the protocol for transporting patients to a designated mental health facility, "[t]he patient may not be physically restrained unless necessary to protect the health and safety of the patient or of a person traveling with the patient." TEX. HEALTH & SAFETY CODE ANN. § 574.045(g) (Vernon 2003). When Deputy Perez arrived at the hospital to transport Gonzalez to the mental health facility, Gonzalez became agitated. He attempted to exit the room to locate Dr. Cortinas to get an explanation. Deputy Perez impeded Gonzalez's exit from the room because he believed Gonzalez was trying to flee. Gonzalez admitted that he used physical force in an attempt to prevent Deputy Perez from restraining him. When faced with hostile resistance, Deputy Perez decided to use the amount of force necessary to detain and handcuff Gonzalez for proper trans-

portation to the mental health facility. Accordingly, we conclude that the decision to restrain and handcuff Gonzalez following his staunch resistance, in order to ensure his safety and the safety of others, involved the personal deliberation and judgment of Deputy Perez, and was thus, discretionary.

### b. *Good Faith*

■ To show good faith, Deputy Perez is required to prove that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Telthorster*, 92 S.W.3d at 465; *Hudson v. Vasquez*, 941 S.W.2d 334, 337 (Tex.App.-Corpus Christi 1997, no writ). Deputy Perez need not prove that it would have been unreasonable not to engage in the conduct, or that all reasonably prudent officers would have engaged in the same conduct. *Telthorster*, 92 S.W.3d at 465. Rather, he must show only that a reasonably prudent officer, under similar circumstances, might have reached the same decision. *Id.*

■ Good faith may be established by the testimony of the officer if the testimony is clear, positive, direct, otherwise credible, free from contradiction and readily controvertible. *Harless v. Niles*, 100 S.W.3d 390, 398 (Tex.App.-San Antonio 2002, no pet.). Mere conclusory statements by an affiant that a reasonable official could have taken the same action are insufficient to establish good faith. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466–67 (Tex.1997).

In the instant case, whether a reasonably prudent officer in Deputy Perez's position could have perceived the need to handcuff Gonzalez depends on Gonzalez's conduct during the encounter. *See City of San Antonio v. Garcia*, 974 S.W.2d 756,

758 (Tex.App.-San Antonio 1998, no pet.). Deputy Perez's deposition testimony showed that upon his arrival at the hospital, he reviewed the pertinent documents relating to Gonzalez's commitment. The application for an emergency commitment order reflected that Gonzalez might be suicidal. Deputy Perez then proceeded to Gonzalez's room, accompanied by the emergency room nurse, Gloria Raya. After Deputy Perez introduced himself and announced his purpose, Gonzalez became agitated. According to Alegria, Gonzalez became upset and said that he was not going to go anywhere with anybody. Gonzalez moved toward Deputy Perez in an apparent attempt to leave the room. Deputy Perez believed that Gonzalez was trying to exit the room to avoid apprehension because of the manner in which Gonzalez approached Deputy Perez, his agitated state, and his statements. Deputy Perez physically impeded Gonzalez's exit. Gonzalez admitted that he used physical force to prevent Deputy Perez from restraining him. Deputy Perez then grabbed Gonzalez's extended arm and placed it behind his back in order to handcuff him. Gonzalez continued to resist aggressively. Deputy Perez took Gonzalez to the ground and placed his knee in Gonzalez's back in order to control and handcuff him. Raya testified that during the struggle, Gonzalez was verbally threatening Deputy Perez and the hospital staff. At some point during the struggle, the Weslaco Police Department was called for assistance. Eventually, Gonzalez was handcuffed, and with the assistance of the security guard and a Weslaco Police Officer, Gonzalez was escorted out of the hospital and into Deputy Perez's vehicle.

In his affidavit, Deputy Perez states that he used only the amount of force necessary to apprehend Gonzalez to transport him to the mental health facility. Deputy Perez believed that force was necessary to secure Gonzalez's safety; and only after Gonzalez reacted aggressively was force necessary to ensure the safety of the hospital personnel in the emergency room. Raya testified that it was fairly common for the hospital to handle mental health commitments. She stated that most of these commitments went unwillingly and needed to be handcuffed while they were escorted to the vehicle.

In light of the above summary judgment evidence, we conclude that a reasonably prudent officer, under the same or similar circumstances, could have believed that the decision to restrain and handcuff Gonzalez was justified based on the information the officer possessed when this conduct occurred. *See Telthorster,* 92 S.W.3d at 465; *Hudson,* 941 S.W.2d at 337. Therefore, we hold that Deputy Perez met his burden to show good faith for the purpose of establishing official immunity.

To controvert Deputy Perez's showing of good faith, Gonzalez was required to prove that no reasonable officer in Deputy Perez's position could have believed that the facts were such that they justified his conduct. *Telthorster,* 92 S.W.3d at 465; *Carrillo,* 7 S.W.3d at 711. Thus, to refute Deputy Perez's summary judgment proof of good faith, Gonzalez was required to submit proof that no reasonable police officer in the deputy's position could have thought the facts were such that they justified restraining and handcuffing him.

Gonzalez responded to appellants' summary judgment evidence with excerpts from his own deposition and excerpts from Alegria's deposition. Gonzalez asserts that prior to Deputy Perez's arrival, he was peacefully waiting with Alegria. Alegria's deposition testimony shows that prior to Deputy Perez's arrival, Gonzalez was not violent or threatening in any manner.

Gonzalez contends that Deputy Perez unlawfully manhandled him without provocation. Alegria also testified that Deputy Perez's conduct was "excessive" and that the situation "could have been taken care of without any physical encounter."

Gonzalez's summary judgment evidence focuses on Gonzalez's demeanor prior to the arrival of Deputy Perez. It fails to discuss the circumstances of this case at the time Deputy Perez's conduct occurred. *See City of San Antonio*, 974 S.W.2d at 758. Gonzalez admitted that he used physical force in an attempt to prevent Deputy Perez from restraining him. Although Gonzalez relies upon Alegria's statement that Deputy Perez's conduct was excessive, Gonzalez failed to present any summary judgment evidence that no reasonable officer could have believed, under the circumstances, that it was reasonable for Deputy Perez to restrain and handcuff Gonzalez. *See Telthorster*, 92 S.W.3d at 465; *Hudson*, 941 S.W.2d at 337.

We hold that Deputy Perez established the affirmative defense of official immunity as a matter of law. Accordingly, we hold the trial court erred in denying appellants' motion for summary judgment based on the ground of official immunity. We sustain appellants' first issue.

### 2. *Sovereign Immunity*

A suit against an official in his official capacity is not a suit against the official, but is rather a suit against the governmental entity he represents. *Graham*, 473 U.S. at 165–66, 105 S.Ct. 3099; *Ferguson*, 97 S.W.3d at 214. Hidalgo County, as a political subdivision of the State, generally enjoys sovereign immunity from tort liability, unless immunity has been waived by the Texas Tort Claims Act ("Act"). *See County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002); *see*

*also* Tex. Civ. Prac. & Rem.Code Ann. § 101.025 (Vernon 1997). The Act expressly waives sovereign immunity in three general areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000); *see* Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997).

Conversely, a governmental entity's sovereign immunity remains intact and it cannot be held liable under section 101.021 based on respondeat superior when the governmental employee enjoys official immunity. *City of Harlingen v. Vega*, 951 S.W.2d 25, 32 (Tex.App.-Corpus Christi 1997, no writ); *see DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995). To that extent, a sovereign immunity claim may be "based on" an individual's assertion of official immunity and falls within the scope of section 51.014(a)(5) of the civil practice and remedies code. *Vega*, 951 S.W.2d at 32 (citing *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex.1993)).

Hidalgo County's sovereign immunity claim is "based on" Deputy Perez's assertion of official immunity. Because Deputy Perez established the affirmative defense of official immunity as a matter of law, we hold that Hidalgo County established the affirmative defense of sovereign immunity as a matter of law. Likewise, as a public official sued in his official capacity, Deputy Perez is protected by the same sovereign immunity enjoyed by the state agency he represents. *Morris v. Copeland*, 944 S.W.2d 696, 698 (Tex.App.-Corpus Christi 1997, no writ). Accordingly, we hold the trial court erred in denying appellants' motion for summary judgment based on the ground of sovereign immunity. We sustain appellants' second issue.

We reverse the trial court's order denying appellants' motion for summary judgment. We grant appellants' motion for summary judgment and render judgment that Gonzalez take nothing by his suit.