COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                       NO.
 2-09-075-CV

 

 

CITY OF FORT WORTH                                                         APPELLANT

 

                                                   V.

 

AUDREY ROBINSON                                                               APPELLEE

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction

The City
of Fort Worth (the City) appeals the trial court=s denial
of its plea to the jurisdiction in the lawsuit filed against it by Appellee
Audrey Robinson.  We hold the City
conclusively established its employee=s
official immunity from suit, thereby establishing the City=s
governmental immunity.  We reverse the
trial court=s order and dismiss this cause
for lack of subject-matter jurisdiction.

 








II.     Procedural History

Robinson
filed suit against the City on October 27, 2008, alleging she was injured when
Officer J.A. Ferguson=s weapon accidentally discharged
while Officer Ferguson and other Special Weapons and Tactics (SWAT) officers Aset upon@ the
vehicle in which she was a passenger. 
Although she did not specifically identify the relevant statute,
Robinson alleged the district court had jurisdiction over her case because the
Texas Legislature waived the City=s
governmental immunity for claims involving personal injury by a City employee
if the employee would be liable to her under Texas law.  The City answered, asserting Robinson=s claims
were barred by the doctrine of governmental immunity.  The City thereafter filed its plea to the
jurisdiction, which the trial court denied by order dated February 20,
2009.  This interlocutory appeal followed.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(a)(8)
(Vernon 2008). 

III.     Standard of Review








Whether
the trial court had subject-matter jurisdiction is a question of law that we
review de novo.  Tex. Natural Res.
Conservation Comm=n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002).  A plea to
the jurisdiction is a dilatory plea that challenges the trial court=s
subject-matter jurisdiction.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  It is used to defeat a cause of action
without regard to whether the claims asserted have merit.  Id.

The
plaintiff has the burden of alleging facts that affirmatively establish the
trial court=s subject-matter jurisdiction.  Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993).  We construe the pleadings
liberally in favor of the plaintiff, look to the pleader=s
intent, and accept the pleadings= factual
allegations as true.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004).  If, as in this case, a plea to
the jurisdiction challenges the existence of jurisdictional facts, we consider
relevant evidence submitted by the parties that is necessary to resolve the
jurisdictional issues.  Id. at
227; Bland, 34 S.W.3d at 555.  








The plea
to the jurisdiction standard generally mirrors that of a traditional motion for
summary judgment.  Miranda, 133
S.W.3d at 228; see Tex. R. Civ. P. 166a(c).  The governmental unit is required to meet the
summary judgment standard of proof for its assertion that the trial court lacks
jurisdiction.  Miranda, 133 S.W.3d
at 228.  Once the governmental unit meets
its burden, the plaintiff is then required to show that there is a disputed
material fact regarding the jurisdictional issue.  Id. 
We take as true all evidence favorable to the nonmovant, and we indulge
every reasonable inference and resolve any doubts in the nonmovant=s
favor.  Wise Reg=l Health
Sys. v. Brittain, 268 S.W.3d 799, 805 (Tex. App.CFort
Worth 2008, no pet.) (citing Miranda, 133 S.W.3d at 228).  If the evidence creates a fact question
regarding jurisdiction, the trial court must deny the plea to the jurisdiction
and leave its resolution to the factfinder. 
Miranda, 133 S.W.3d at 227B28.  But if the evidence is undisputed or fails to
raise a fact question on the jurisdictional issue, the trial court rules on the
plea to the jurisdiction as a matter of law. 
Id. at 228.

IV.    Factual Background

The
record before the trial court at the hearing on the City=s plea
to the jurisdiction consisted of Robinson=s
original petition, the City=s plea,
Robinson=s
response, an affidavit by Officer Ferguson, and an affidavit by Robinson.  Because we assume the truth of the nonmovant=s
evidence when reviewing a plea to the jurisdiction, Brittain, 268 S.W.3d
at 805, we summarize the evidence in the light most favorable to Robinson, the
nonmovant.  Where appropriate, we
acknowledge discrepancies in the evidence in footnotes.[1]








At
approximately 11 a.m. on April 16, 2008, Robinson was the passenger and Clayton
Warwick was the driver of a Mazda sedan parked on Katy Street in Fort Worth,
Texas.  Officer Ferguson, his partner
Officer D. Nelson, and other members of the SWAT Unit were also in the area, on
burglary detail.  During the operation,
the officers became suspicious of Warwick=s
vehicle because they initially believed it to be empty and abandoned.  Looking into Warwick=s
vehicle as he drove past, Officer Ferguson saw Warwick in the driver seat[2]
mixing what Officer Ferguson believed to be a narcotic in an aluminum can
bottom.  Officer Ferguson believed the substance
to be a narcotic because, in his experience, narcotics users commonly prepare
narcotics by mixing them in this manner before using them with a syringe.  The substance was later determined to be
heroin.








Officer
Ferguson continued past Warwick=s
vehicle and turned around at the next block. 
He called Officer K.W. Clowers, who was also working with the SWAT unit
at the time, to advise him of the narcotics sighting.  Officer Clowers drove toward Warwick=s
vehicle from the front, stopping his truck two feet from the front bumper, and
Officer Ferguson drove toward Warwick=s
vehicle from behind, stopping his truck two feet from the rear bumper.  Officer Clowers, wearing jeans and a t-shirt,
approached from the front, and Officer Ferguson, wearing jeans and a polo
shirt, approached from the rear.  The officers
did not identify themselves as police officers and did not wear anything to
indicate they were police officers.[3]

As he
approached the vehicle, Officer Ferguson drew his handgun and pointed it at the
ground with his finger off the trigger. 
Through the back window of the vehicle, Officer Ferguson saw that
Warwick had a syringe in his right hand and that he was emptying the syringe=s
contents onto the floor. Robinson stated, however, that Warwick did not
threaten any of the officers with the syringe and did not make any movements
the officers at the scene would consider threatening.[4]








Officer
Ferguson, now within one or two feet of Warwick, ordered Warwick to turn off
the vehicle.  Concerned that Warwick
might use the syringe as a weapon to stab him, and unaware of the exact
contents of the syringe, Officer Ferguson pointed his weapon at Warwick with
his finger on the trigger.  Warwick then
put the vehicle in reverse and hit Officer Ferguson=s
pick-up truck.  After the vehicle came to
rest, Officer Ferguson, with the gun in his left hand, attempted to open the
door to pull Warwick out of the vehicle. 
The gun then accidentally discharged, and the bullet struck Robinson in
the leg.[5]  

Officer
Ferguson said he did not know as he approached the vehicle if Warwick was a
drug dealer or if Warwick was armed. 
However, he stated he believed Warwick was threatening serious bodily
harm to the officers because the syringe was a potential weapon and because Warwick
refused to exit or turn off his vehicle. 
Officer Ferguson felt he needed to point his weapon at Warwick to shoot
him, if necessary, to prevent being stabbed or struck by the vehicle if Warwick
attempted to flee.  Officer Ferguson also
believed he would have placed himself and the other officers in more danger had
he not approached Warwick=s vehicle with his gun
drawn.  Officer Ferguson averred that,
based on his training and experience, and in light of the threats posed,
another reasonable officer could have believed it appropriate to point his
weapon at Warwick with his finger on the trigger.  Officer Ferguson stated that his actions
complied with the Police Department=s
General Orders concerning the use of deadly force. 

 

 








V.     Analysis

In two
issues, the City contends that there were no fact issues that precluded
rendition of judgment on the City=s plea
to the jurisdiction and that it conclusively established Officer Ferguson=s
official immunity, thereby establishing the City=s
governmental immunity.  Because the City=s issues
are related, we consider them together.

A.     Governmental Immunity

AWhen
official immunity shields a governmental employee from liability, sovereign
immunity shields the governmental employer from vicarious liability.@  Univ. of Houston v. Clark, 38 S.W.3d
578, 580 (Tex. 2000) (citing DeWitt v. Harris County, 904 S.W.2d 650,
653 (Tex. 1995)).  Invoking this rule,
the City argues Robinson=s lawsuit is barred by
governmental immunity because official immunity would protect Officer Ferguson
had Robinson sued him individually. 








Unless
waived by the State, governmental immunity from suit defeats a trial court=s
subject‑matter jurisdiction. 
Miranda, 133 S.W.3d at 225. 
Relevant to this case, section 101.021(2) of the Tort Claims Act waives
governmental immunity for personal injury caused by the use of tangible
personal property, but only to the extent the governmental unit would be liable
to the claimant under Texas law if it were a private person.  Tex. Civ. Prac. & Rem. Code Ann. ''
101.021(2), 101.025(a) (Vernon 2005). 
Conversely, the Tort Claims Act does not waive governmental immunity if
the governmental unit would not be liable to the claimant under Texas law if it
were a private person.  Id. ''
101.021(2), 101.025(a).  Thus, the Tort
Claims Act creates a unique statutory scheme in which immunity from liability
and immunity from suit are coextensive.  Miranda,
133 S.W.3d at 224; see also Tex. Civ. Prac. & Rem. Code ''
101.021(2), 101.025(a).  

In this
case, Robinson contends the City is vicariously liable for Officer Ferguson=s
conduct.  If official immunity would
shield Officer Ferguson from liability, the City cannot be vicariously liable
for his acts, and the Tort Claims Act does not waive the City=s
governmental immunity.  Clark, 38
S.W.3d at 580; City of San Antonio v. Trevino, 217 S.W.3d 591, 593, 596
(Tex. App.CSan Antonio 2006, no pet.).  Thus, we must determine whether official
immunity would protect Officer Ferguson from liability had Robinson sued him
individually. 

B.     Official Immunity for Injuries Sustained
During an Arrest








A
governmental employee is entitled to official immunity for discretionary duties
within the scope of the employee=s
authority that are performed in good faith. 
Leachman v. Dretke, 261 S.W.3d 297, 315 (Tex. App.CFort
Worth 2008, no pet.); see also Telthorster v. Tennell, 92 S.W.3d 457,
461 (Tex. 2002); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994).  A[O]fficial
immunity is designed to protect public officials from being forced to defend
their decisions that were reasonable when made, but upon which hindsight has
cast a negative light@ because A>the
public would suffer if government officers, who must exercise judgment and
discretion in their jobs, were subject to civil lawsuits that second-guessed
their decisions.=@  Telthorster, 92 S.W.3d at 463
(quoting Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994)). Because
Robinson does not contest Officer Ferguson was performing a discretionary duty
within the scope of his employment at the time his weapon accidentally
discharged, we address only the good faith element of the official immunity
test.  See Trevino, 217 S.W.3d at
591.








In Chambers,
the Supreme Court of Texas held that an officer establishes good faith in a
police-pursuit case by showing a reasonably prudent officer could have believed
it necessary to continue the pursuit, balancing the need for immediate police
intervention against the risk of harm to the public.  883 S.W.2d at 656.  The supreme court later extended this test to
high-speed emergency responses and elaborated on the need and risk elements.  Wadewitz v. Montgomery, 951 S.W.2d
464, 467 (Tex. 1997).  The court
explained that the need element is determined by the seriousness of the
emergency, the necessity of the officer=s
immediate response, and the alternate courses of action available, if any.  Id. 
The risk aspect involves the potential harm the officer=s
actions could cause, the likelihood of the potential harm, and the clarity of
the risk of harm to a reasonably prudent officer.  Id.

In Telthorster,
the court specifically declined to apply the Wadewitz good-faith
standard to an officer=s conduct that causes injuries
during an arrest Abecause the public-safety
concerns underlying [the Wadewitz] assessment are not implicated@ in an
arrest-injury case.  92 S.W.3d at 459B60.  Instead, the court held that an officer
proves good faith in an arrest-injury case by showing Athat a
reasonably prudent officer, under the same or similar circumstances, could have
believed that his conduct was justified based on the information he possessed
when the conduct occurred.@  Id. at 459.  This does not require the officer to prove
that all reasonably prudent officers would have engaged in the same conduct or
that it would have been unreasonable to not engage in the conduct.  Id. at 465.  Instead, the officer Amust prove
only that a reasonably prudent officer, under similar circumstances, might
have reached the same decision.@  Id. (emphasis in original).  Once the officer meets this burden, the
plaintiff must Ado more than show that a
reasonably prudent officer could have reached a different decision.@  Id. 
AInstead,
[the plaintiff] must offer evidence that no reasonable officer in [the
officer=s]
position could have believed that the facts were such that they justified his
conduct.@  Id. (emphasis added). 

 








C.     Officer Ferguson=s Good
Faith Under Telthorster

The
City, citing Telthorster and relying on Officer Ferguson=s
affidavit, argues it conclusively established Officer Ferguson=s good
faith conduct during the accidental shooting because a reasonably prudent
officer could have believed it necessary to engage in the same conduct.[6]   








Officer
Ferguson stated in his affidavit that he was suspicious of Warwick=s
vehicle because it initially appeared empty and abandoned.  He also stated that he saw Warwick mixing a
narcotic in his vehicle, that Warwick had a syringe and was emptying its
contents onto the floor, that he was concerned Warwick would use the syringe as
a weapon, and that Warwick ignored multiple orders to turn off his vehicle.  Officer Ferguson was within one to two feet
of Warwick and believed it necessary to point his weapon at Warwick during the
encounter.  Officer Ferguson said he
believed Warwick was threatening serious bodily harm to himself and his fellow
officers because the syringe was a potential weapon and because Warwick refused
to exit or turn off his vehicle.  Officer
Ferguson further averred he would have placed himself and the other officers in
more danger had he not approached Warwick=s
vehicle with his gun drawn.  Finally,
Officer Ferguson stated that, based on his training and experience, and in
light of the threats posed, another reasonable officer could have believed it
appropriate to point his weapon at Warwick with his finger on the trigger.  

This
evidence satisfied the City=s burden
under Telthorster to prove that a reasonably prudent officer, under
similar circumstances, could have believed Officer Ferguson=s
conduct was justified.  Id. at
460; see also Hidalgo County v. Gonzalez, 128 S.W.3d 788, 795B96 (Tex.
App.CCorpus
Christi 2004, no pet.) (holding that officer met Telthorster burden when
he testified he believed force was necessary to ensure detainee=s
safety, he used only the amount of force necessary, and he used force only
after detainee reacted aggressively).  We
must therefore determine if Robinson offered evidence sufficient to create
genuine issues of material fact.  Telthorster,
92 S.W.3d at 465.  

 








D.     Robinson=s
Controverting Evidence Under Telhorster

Once the
City met its burden of proof, Robinson was required to offer evidence that no
reasonable officer in OfficerFerguson=s
position could have believed the facts justified his conduct.  Id. 
To create a genuine issue of material fact, she was required to Ado more
than show that a reasonably prudent officer could have reached a different
decision.@ 
Id.   

Citing Telthorster,
Robinson first contends a good faith analysis balances the officer=s need
to place himself in the situation against the risk of public harm by engaging
in the conduct.  However, the need/risk
assessment does not apply to cases like this one involving injuries sustained
during an arrest.  Id. at
459.  Robinson=s
reliance on the need/risk analysis is therefore misplaced.  Id.








Without
citation to authority, Robinson also contends the City cannot establish Officer
Ferguson=s good
faith because Officer Ferguson violated the Fort Worth Police Department=s
General Orders.  However, Aan
officer=s good
faith is not rebutted by evidence that he violated the law or department policy
in making his response.@ 
Johnson v. Campbell, 142 S.W.3d 592, 596 (Tex. App.CTexarkana
2004, pet. denied); see also Vazquez v. City of San Antonio, No.
04-05-00707-CV, 2006 WL 1539636, at *4 (Tex. App.CSan
Antonio June 7, 2006, no pet.).  ANor does
recklessness in the performance of the officer=s duty
belie his good faith.  Recklessness is
negligence, and negligence is immaterial when determining if an officer acted
in good faith.@ 
Johnson, 142 S.W.3d at 596. 
Thus, even assuming Officer Ferguson violated department policy, his
alleged violation does not mean Officer Ferguson did not act in good
faith.  Id. 








In her
affidavit, Robinson does not deny that Warwick was mixing a narcotic in his
vehicle, that Warwick had a syringe, that Warwick refused multiple orders to
turn off the vehicle, or that Warwick attempted to escape by backing his vehicle
into Officer Ferguson=s truck.  Robinson also does not contradict Officer
Ferguson=s
statements that he believed Warwick was threatening serious bodily harm to the
officers because the syringe was a potential weapon and that Warwick refused to
exit or turn off his vehicle.  She also
does not contradict Officer Ferguson=s
statement that the officers would have been in more danger had Officer Ferguson
not pointed his weapon at Warwick. 
Although there are factual differences between Robinson=s and
Officer Ferguson=s affidavit testimony, the
differences are not genuine issues of material fact because they do not
suggest that no reasonable officer could have acted as Officer Ferguson
acted.  See Telthorster, 92 S.W.3d
at 466B67
(holding plaintiff did not controvert good faith where evidence was conclusory
and did not establish that no reasonable officer would have been concerned for
his safety under the particular facts of the case).  In short, Robinson did not present evidence
that Ano
reasonable officer under similar circumstances could have believed that the
facts were such that they justified the disputed conduct.@  Id. at 465.  We sustain the City=s first
and second issues.

VI.    Conclusion

Because
we sustain both of the City=s
issues, we reverse the trial court=s order
denying the City=s plea to the jurisdiction.  We dismiss this cause for lack of
subject-matter jurisdiction.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; GARDNER and
MEIER, JJ.

 

DELIVERED:  November 12, 2009  











[1]Although Robinson=s and Officer Ferguson=s affidavit testimony
differ, we hold the differences do not present genuine issues of material
fact.  We explain our holding in section
V, below.





[2]Officer Ferguson did not
initially see Warwick in the vehicle because Warwick had his seat reclined and
was leaning back in the seat.  





[3]Contrary to Robinson=s account, Officer
Ferguson stated that he and Officer Nelson wore their SWAT identification vests
over their civilian clothes and that Officer Clowers shouted, APolice, get out of the
car,@ as he exited his truck. 





[4]To the contrary, Officer
Ferguson stated that as he approached the vehicle, Warwick balled his fist,
with the needle of the syringe extending out, as if he might use the syringe as
a weapon.  





[5]Officer Ferguson said that
he had already opened the vehicle door before Warwick put the vehicle in
reverse and that as the vehicle moved backward, the open door struck him,
causing his weapon to accidentally discharge. 





[6]The City does not cite,
and we have not found, a case applying the Telthorster good-faith
standard to a plea to the jurisdiction. 
However, other courts have applied the Wadewitz good-faith
standard to pleas to the jurisdiction.  See
Trevino, 217 S.W.3d at 593, 596 (applying Wadewitz and reversing
order denying city=s plea to jurisdiction
where city conclusively established officer=s official immunity); Harris County v. Smyly,
130 S.W.3d 330, 333B34, 336 (Tex. App.CHouston [14th Dist.]
2004, no pet.) (applying Wadewitz and affirming order denying county=s plea to jurisdiction
where county did not conclusively establish officer=s official
immunity).  The Wadewitz
good-faith standard addresses police emergencies while the Telthorster
good-faith standard addresses injuries sustained during an arrest.  Telthorster, 92 S.W.3d at 459.  Because the Wadewitz good-faith
standard and the Telthorster good-faith standard both consider what a
reasonably prudent officer could have believed under similar circumstances, it
follows that if courts apply the Wadewitz good-faith standard to pleas
to the jurisdiction, courts should also apply the Telthorster good-faith
standard to pleas to the jurisdiction. 
Thus, we apply the Telthorster good-faith standard to determine
whether the City conclusively established Officer Ferguson=s official immunity.