

# NUMBER 13-21-00180-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CAMERON COUNTY, Appellant,

v.

JOHN PAUL SOSSI, Appellee.

On appeal from the 444th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellee John Paul Sossi filed suit against appellant Cameron County (County) after he was involved in a motor-vehicle accident with County employee Daniel Galvan, a park ranger and commissioned peace officer. In this interlocutory appeal, the County contends that the trial court erred in denying its plea to the jurisdiction because the County conclusively established its immunity from Sossi's suit through either the Texas Tort

Claims Act's (TTCA) emergency-response exception or Ranger Galvan's official immunity. We reverse and render.

## I. BACKGROUND

On July 4, 2018, at approximately 8:00 p.m., Ranger Galvan was patrolling Isla Blanca Park on the south end of South Padre Island when he received a phone call from his superior, Sergeant Julio Silva, asking for backup on the north end of the island to assist with crowd and traffic control. The holiday traffic on the island was bumper-to-bumper, so Ranger Galvan decided to bypass the traffic by driving in the bicycle lane on Padre Boulevard as he traveled northbound.

Sossi was driving southbound on Padre Boulevard, waiting in the turning lane to make an unprotected left turn onto East Pompano Street. Vehicles traveling in the two northbound lanes of Padre Boulevard stopped and formed a gap in the traffic, allowing Sossi to make his turn. As Sossi proceeded through the turn onto East Pompano Street, he was struck by Ranger Galvan traveling in the northbound bicycle lane.

Sossi filed suit against the County, alleging that Ranger Galvan's negligent and reckless conduct while in the course and scope of employment proximately caused Sossi to suffer personal injury and property damage. Sossi cited § 101.025(a) of the TTCA as the basis for the County's waiver of immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a).

The County filed a plea to the jurisdiction arguing, as they do here, that Ranger Galvan's conduct was excepted from the TTCA's waiver of immunity because he was responding to an emergency call and complying with the laws and ordinances applicable

2

to emergency action. Alternatively, the County argued that Ranger Galvan was entitled to official immunity because he acted in good faith when he responded to Sergeant Silva's request for backup. To support these arguments, the County attached copies of deposition testimony by Ranger Galvan and Sossi, affidavits by Ranger Galvan and an uninterested witness, and photographs of the scene.

Ranger Galvan testified that he received a phone call from Sergeant Silva saying that "he was overwhelmed with people in the north end." Ranger Galvan considered the situation to be an emergency because Sergeant Silva was by himself contending with "reckless drivers" on the shoreline who "can strike a child or strike a pedestrian or cause an accident." Ranger Galvan explained that "distracted and intoxicated drivers are more prevalent when large crowds are present," and he was aware of complaints about "reckless driving in that area." Ranger Galvan believed that these circumstances posed "a significant and immediate risk of injury-causing accidents, including serious accidents."

Additionally, Ranger Galvan said that the number of rangers on patrol in the north end varies but in instances of high traffic, there are typically "two to three" rangers assigned to that area. According to Ranger Galvan, he was the only ranger available to respond to Sergeant Silva's call because the three other rangers on patrol that day were assigned to a "special detail." Thus, "without assistance, Sergeant Silva was at a much greater risk of himself suffering physical harm if he tried to break up a disturbance or if he encountered resistance from anyone that he sought to arrest," according to Ranger Galvan.

When Ranger Galvan received the call from Sergeant Silva, he was approximately

3

seven miles away from the north end of the island. Ranger Galvan said that he activated his lights and siren but "the traffic could not or would not move to allow me to use a regular traffic lane to proceed northbound." Due to the gridlock, Ranger Galvan believed it would take "drastically over an hour" to reach Sergeant Silva's location, so he elected to bypass traffic in the bicycle lane. Ranger Galvan said he was driving "way less than the speed limit," which was thirty miles per hour, and estimated that he was driving "between 10 to 15 miles an hour" at the time of the accident. The witness agreed that Ranger Galvan's lights were activated and said the "officer was clearly doing less than 20 MPH."

During his deposition, Sossi testified that he could not remember if Ranger Galvan's lights and siren were on. He said the stopped vehicles obstructed his view of the bicycle lane, so he was unaware Ranger Galvan was traveling in the bicycle lane until impact. The witness agreed that Sossi "clearly could not see [Ranger Galvan]" before he made his turn.

Sossi filed a response to the plea arguing that material fact issues existed regarding whether Ranger Galvan (1) was responding to an emergency call, and (2) acted recklessly instead of in good faith. In addition to relying on evidence submitted by Ranger Galvan, Sossi attached copies of the Texas Peace Officer's Crash Report and an internal incident report completed by Sergeant Silva. In the crash report, the investigating officer opined that Ranger Galvan failed to yield the right-of-way to Sossi, suggesting that Ranger Galvan was at fault. In the internal incident report, Sergeant Silva provided a brief narrative of what occurred but did not mention that Ranger Galvan was responding to an emergency call for backup at the time of the accident. According to Sossi, this omission

4

raised a fact question as to whether Ranger Galvan even received a phone call from Sergeant Silva.

Sossi chiefly argued, however, that if an emergency had truly existed, then instead of purportedly calling Ranger Galvan on his cell phone, Sergeant Silva would "have followed proper protocol and used the official radio network for law enforcement to communicate the emergency to all available units." Because there was no emergency, Sossi reasoned that Ranger Galvan's decision to drive in the bicycle lane posed an unreasonable risk to other motorists like himself.

The trial court denied the plea, and this interlocutory appeal followed. *See id.* § 51.014(a)(8).

## II.   STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

Sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008).

Governmental immunity offers the same protections for political subdivisions of the State like counties. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). To prevail on a claim of immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a defendant challenges the existence of jurisdictional facts, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). Thus, "in evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528–29 (Tex. 2022) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). Also, when a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

As a political subdivision of the State, the County is generally immune from suits for tort damages unless immunity has been waived by the TTCA. *See Hidalgo County v. Gonzalez*, 128 S.W.3d 788, 796 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)). Under the TTCA, the County is vicariously liable for auto accidents caused by its employees acting within the scope of their employment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A).

However, "[t]he Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent." *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006). Accordingly, the TTCA's waiver of immunity is not triggered by "the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action." TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). If no such law or ordinance exists, then immunity is retained so long as "the action is not taken with conscious indifference or reckless disregard for the safety of others." *Id.* When, as here, a governmental entity raises the emergency-response exception, the plaintiff bears the burden of establishing that the exception does not apply. *Maspero*, 640 S.W.3d at 529 (citing *Hartman*, 201 S.W.3d at 672).

On the other hand, official immunity is an affirmative defense that insulates a governmental employee from personal liability for the performance of discretionary duties within the scope of the employee's authority, provided the employee acts in good faith. *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). As an affirmative defense, the party urging official immunity must conclusively prove each element of the defense to obtain summary judgment. *Id.* (citing *Kassen v. Hatley*, 887 S.W.2d 4, 8–9 (Tex. 1994)). "When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability." *Id.* (citing *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(B) (limiting a governmental employer's vicarious liability to the extent "the

7

employee would be personally liable to the claimant according to Texas law").

### III. ANALYSIS

Sossi argues, as he did in the trial court, that he raised a fact issue on whether Ranger Galvan was "responding to an emergency call." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2). The thrust of his argument is that police generally follow certain procedures when requesting emergency backup, and the fact Sergeant Silva called Ranger Galvan directly on his cell phone, as opposed to radioing for emergency backup through dispatch, raises an inference that Sergeant Silva did not consider the situation to be an emergency. The County responds that, regardless of whether Ranger Galvan was "responding to an emergency call," the exception also broadly applies to government employees "reacting to an emergency situation," and either way, the key inquiry is whether he was taking emergency action. *See id.*; *Hartman*, 201 S.W.3d at 673 ("[B]ecause the Act creates governmental liability where it would not otherwise exist, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include." (citing *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006))).

To that end, the County argues that it conclusively established that the circumstances that day—a single patrol officer "overwhelmed" by large holiday crowds and reckless drivers on a beach—constituted an emergency. We note that determining what constitutes an "emergency" is a fact-specific inquiry. *See, e.g.*, *Hartman*, 201 S.W.3d at 672–73 (finding that a flood constituted an emergency); *City of San Antonio v. Smith*, 562 S.W.3d 75, 84–85 (Tex. App.—San Antonio 2018, pet. denied) (finding that a downed

8

light pole blocking the roadway constituted an emergency); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410 (Tex. App.—Fort Worth 2006, pet. denied) (finding that an arrestee escaping from a police vehicle constituted an emergency). But we need not decide that question today, because even if the situation did not rise to the level of an emergency, the County conclusively showed that Ranger Galvan is entitled to official immunity.

As noted, a governmental employee is entitled to official immunity for discretionary duties performed within the scope of the employee's authority and in good faith. *Univ. of Hous.*, 38 S.W.3d at 580. It is undisputed that by driving in the bicycle lane, Ranger Galvan was performing a discretionary function within the scope of his authority.[1] Sossi contends, however, that the County has not conclusively proven that Ranger Galvan was acting in good faith at the time of the collision. In particular, he argues that, coupled with the "dubious nature" of the phone call, "[t]he fact that [Ranger] Galvan was speeding immediately before the collision, failed to safely clear the intersection, and exercised no caution are genuine issues of material fact for a jury to consider in determining whether [Ranger] Galvan's actions obtain [o]fficial [i]mmunity status as a matter of law."

In the context of an emergency response, as alleged by the County here, "good faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event." *City of San Antonio v. Riojas*,

---

[1] Under the Texas Transportation Code and municipal ordinance, Ranger Galvan was authorized to drive in the bicycle lane for emergency purposes. *See* TEX. TRANSP. CODE ANN. § 545.058(c); S. PADRE ISLAND, TEX., CODE OF ORDINANCES ch. 18, art. 1, § 18-19(A)(19) (2018), *available at* https://library.municode.com/tx/south_padre_island/codes/code_of_ordinances (last visited Aug. 30, 2022).

640 S.W.3d 534, 539 (Tex. 2022) (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)). Need factors include "the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result." *Id.* (quoting *Wadewitz*, 951 S.W.2d at 467). On the other side of the ledger, risk factors include the severity and likelihood of harm to bystanders, "and whether any risk of harm would be clear to a reasonably prudent officer." *Id.* (quoting *Wadewitz*, 951 S.W.2d at 467).

The Supreme Court of Texas has explained that the "need-risk assessment does not place an onerous burden on law enforcement," comparing it to an abuse of discretion standard. *Id.* at 539–40 (citing *Clark*, 38 S.W.3d at 581). "Magic words are not required to establish that a law-enforcement officer considered the need/risk balancing factors." *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 645 (Tex. 2015) (per curiam) (citing *Wadewitz*, 951 S.W.2d at 467). "[W]hen the summary-judgment record bears competent evidence of good faith, that element of the official-immunity defense is established unless the plaintiff shows that *no* reasonable person in the officer's position could have thought the facts justified the officer's actions." *Id.* at 643 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994)). Simply put, official immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Riojas*, 640 S.W.3d at 540 (quoting *Bonilla*, 481 S.W.3d at 643).

In Ranger Galvan's affidavit, which was consistent with his deposition testimony, he explained his need-risk assessment as follows:

3. On the evening of July 4, 2018, I was in Isla Blanca Park on South Padre Island when I received a call from Sergeant Julio Silva, a superior officer, for assistance. Sergeant Silva was in the North End area of South Padre Island. He advised me that the shoreline was packed, that he was overwhelmed with people in the North End, and that drivers were acting recklessly and putting other persons on the beach at risk. I also heard on my police radio, before and during my shift, calls regarding reckless driving in that area. This presented an emergency situation because crowds and traffic were much heavier than usual because of the holiday, because beachgoers share the beach with heavy traffic, because distracted and intoxicated drivers are more prevalent when large crowds are present, and because those factors caused a significant and immediate risk of injury-causing accidents, including serious accidents, and of persons acting disorderly and engaging in assaultive, vandalistic, and reckless conduct. Moreover, without assistance, Sergeant Silva was at a much greater risk of himself suffering physical harm if he tried to break up a disturbance or if he encountered resistance from anyone that he sought to arrest.

4. As soon as I left Isla Blanca Park, I activated my emergency lights and sirens. I encountered bumper-to-bumper traffic on Padre Blvd., which is also known as Park Road 100, a state highway. I needed to timely respond to Sergeant Silva's request for assistance to help control the crowd and to prevent injuries to persons and property in the North End and because no other officer in the area was available to assist Sergeant Silva.

5. I was around seven miles from Sergeant Silva's location. Despite activating the emergency lights and siren on my patrol vehicle, the traffic could not or would not move to allow me to use a regular lane to proceed northbound on Padre Blvd. to Sergeant Silva's location.

6. To timely assist Sergeant Silva and help him control the situation earlier rather than much later, I chose to use the paved shoulder of Padre Blvd. to pass the stalled traffic. The paved shoulder is also designated as a bicycle lane. The emergency lights and siren on my patrol vehicle were still activated. I was driving 10 to 15 miles per hour in the bicycle lane with a motorist or bicyclist, I considered the risk to be minimal because motorists are expected to check the bicycle lane before entering or crossing it, because I was traveling on a straight road without obstructions in the bicycle lane such that I could see and be seen a significant distance down the lane, because my patrol vehicle was more visible than a bicycle, because I was traveling at a low speed with my emergency lights and siren activated, and because, in the unlikely event a collision occurred, the collision would occur at a low speed and be unlikely to result in major injury. I considered the risk justified because of the need to give timely assistance to Sergeant Silva and

11

because the only alternative course of action was to leave Sergeant Silva unassisted while I waited for the traffic in the main lanes to clear. If I stayed in the traffic, my response time would have been drastically over an hour.

Sossi has never controverted Ranger Galvan's account of the conditions on South Padre Island that day, and although a mixture of "packed" beaches and "reckless drivers" may not be as urgent as an ongoing assault or a highspeed chase, Ranger Galvan clearly articulated a legitimate need to reach the north end of the island sooner rather than later. *See Riojas*, 640 S.W.3d at 541 (explaining that "official immunity's purpose [is] encouraging energetic law enforcement").

Most importantly, Ranger Galvan's response was proportionate to the need. Contrary to Sossi's suggestion on appeal that Ranger Galvan "was speeding immediately before the collision . . . and exercised no caution," the undisputed evidence in the record shows that Ranger Galvan had activated his lights and siren and "was clearly doing less than 20 MPH" at the time of the accident. Additionally, Ranger Galvan provided a photo of the intersection of Padre Boulevard and East Pompano Street that is consistent with his description of Padre Boulevard as "a straight road without obstructions in the bicycle lane such that I could see and be seen a significant distance down the lane."

Finally, Ranger Galvan's decision to proceed through the intersection at a low rate of speed posed a minimal risk of serious injury to the public. This is not a case where an emergency response vehicle entered an intersection against a red light, and even those situations, which are inherently dangerous, can result in a finding of official immunity. *See, e.g., City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 703–06 (Tex. App.—Austin 2005, no pet.) (concluding firefighter that considered risks, looked for traffic that

might pose danger, and weighed risks and need before proceeding through red light was entitled to summary judgment on official immunity defense). Instead, the northbound lanes on Padre Boulevard had the right-of-way at the intersection, and when Sossi made his unprotected left turn, he was responsible for confirming the bicycle lane was clear before proceeding through the lane. *See* S. PADRE ISLAND, TEX., CODE OF ORDINANCES ch. 18, art. 1, § 18-19(A)(19) (2018), *available at* https://library.municode.com/tx/ south_padre_island/codes/code_of_ordinances (last visited Sept. 12, 2022) ("The driver of a motor vehicle shall yield to any bicycle in the lane at all times.").

Regardless, mere negligence is not sufficient to show that Ranger Galvan acted in bad faith. *See Chambers*, 883 S.W.2d at 655 ("If public officials perform their duties without negligence, they do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently." (citing *Chapman v. Gonzales*, 824 S.W.2d 685, 687–88 (Tex. App.—Houston [14th Dist.] 1992, writ denied))); *Wadewitz v. Montgomery*, 914 S.W.2d 239, 243 (Tex. App.—Waco 1996), *aff'd*, 951 S.W.2d 464 (Tex. 1997) ("The *Chambers* test allows a police officer wide latitude in deciding how to perform his discretionary duties and tolerates a great amount of negligence in the manner in which he performs them before he will be found to have acted in bad faith." (citing *Chambers*, 883 S.W.2d at 656–57)); *see also City of Dallas v. Ross*, No. 05-21-00001-CV, 2021 WL 4304478, at *5 (Tex. App.—Dallas Sept. 22, 2021, no pet.) (mem. op.) ("The mere fact that an accident occurred is not evidence that [the officer] did not act in good faith. Otherwise, no officer would be entitled to official immunity in a traffic accident when

responding to an emergency situation.").

Based on the record before us, we conclude that Ranger Galvan presented competent evidence of good faith, and Sossi failed to show "that *no* reasonable person in the officer's position could have thought the facts justified the officer's actions." *Bonilla*, 481 S.W.3d at 643 (quoting *Chambers*, 883 S.W.2d at 657). Because Ranger Galvan is entitled to official immunity, the trial court erred when it denied the County's plea to the jurisdiction.

## IV. CONCLUSION

We reverse and render judgment dismissing the case for want of jurisdiction.

GINA M. BENAVIDES
Justice

Delivered and filed on the
22nd day of September, 2022.

14